5 F.3d 500
 SOUTHPACE PROPERTIES, INC., Plaintiff-Appellant, Cross-Appellee,
v.
ACQUISITION GROUP, The, a General Partnership; Robert B.
Chambers, individually and as General Partner of The
Acquisition Group, a General Partnership; Chris T. Turner,
individually, and as General Partner of The Acquisition
Group, a General Partnership; W. Fletcher Steele,
individually, and as General Partner of The Acquisition
Group, a General Partnership; Frank B. Myers, Jr.,
individually, and as General Partner of The Acquisition
Group, a General Partnership; Robert N. Wesley,
individually and as General Partner ofThe Acquisition Group,
a General Partnership; Claiborne G. Thomasson, individually
and as General Partner of The Acquisition Group, a General
Partnership, Defendants-Appellees, Cross-Appellants.
 No. 92-6965.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 25, 1993.
 
 Richard F. Ogle, David O. Upshaw, Birmingham, AL, for plaintiff-appellant.
 Phillip J. Carroll, III, Birmingham, AL, for defendants-appellees.
 Appeals from the United States District Court for the Northern District of Alabama.
 Before FAY and HATCHETT, Circuit Judges, and JOHNSON, Senior Circuit Judge.
 HATCHETT, Circuit Judge:
 
 
 1
 Pursuant to Alabama law, we affirm the district court's rulings: (1) that the conveyance of real property from its owner to a partnership in which the owner had an interest did not constitute a sale or exchange as contemplated in a real estate listing agreement; and (2) that a clause in the agreement constitutes a penalty under Alabama law.
 
 I. FACTS
 
 2
 On January 24, 1990, Southpace, an Alabama corporation, and Acquisition Group (AG) entered into an "Exclusive Listing Agreement" involving thirty-one acres of a golf driving range, located in Shelby County, Alabama. The Listing Agreement provided:
 
 
 3
 (1) Exclusive right to sell or exchange.
 
 
 4
 In consideration of the promise of the Broker to list in its efforts to sell or exchange the Property of the Owner, the Owner hereby grants the Broker the sole and exclusive right to offer for sale or exchange and to sell or exchange such property through its efforts for a purchase price of not less than $1,600,000.
 
 
 5
 (2) Duration of the agreement.
 
 
 6
 (a) This agreement shall remain in force for a period of 180 days from the date specified above. In the event a portion of the Property is sold or exchanged, this Exclusive Listing Agreement shall remain in force with respect to the remaining Property for an additional period of one year following the date of each such sale or exchange.
 
 
 7
 (b) During the term specified above, this Agreement shall be irrevocable.
 
 
 8
 (c) During the term of this Agreement, the Owner shall have no right to withdraw the Property from sale or exchange or otherwise prevent the Broker from selling or exchanging the Property. In the event the Owner attempts to withdraw the Property from sale or exchange or otherwise prevents Broker from selling or exchanging the Property, the Broker shall be entitled to its commission in full.
 
 
 9
 ....
 
 
 10
 (6) Commission.
 
 
 11
 If the Property is sold or exchanged through the efforts of the Broker or if the Broker locates a prospect ready, willing, and able to purchase or exchange for the Property, or in the event that the Property is sold or exchanged while this Agreement is in force, by the Owner or anyone else, the Broker will be entitled to a commission in the amount equal to the following: six percent (6%) of the gross sales price. In the event of any material breach of this Agreement by the Owner, Broker shall be entitled to recover its commission together with a reasonable attorneys fee and any other costs and expenses relating to or arising from such breach.
 
 
 12
 After the parties executed the Listing Agreement, James Jackson, a Southpace broker, attempted to sell the property and received offers of less than the listed price from the "Stephens Group." In February, 1990, the Stephens Group contacted AG regarding the sale of the property. Although the parties were unable to agree on an acceptable price, the Stephens Group made an offer to purchase of $1.1 million.
 
 
 13
 In May, 1990, the Stephens Group and AG formed a limited partnership under the laws of Arkansas for the purpose of operating the golfing facility. Under the limited partnership agreement, Family Golf and Recreation Management, Inc., a corporate entity of the Stephens Group, was designated the general partner, and Family Golf and Recreation Management of America, Inc., another corporate entity of the Stephens Group, and AG were named limited partners. The two corporate entities agreed to contribute the money to the partnership to operate the facility, and AG agreed to contribute the real property. Thus, in May, 1990, AG conveyed title to the property to the newly formed partnership with a warranty deed.
 
 
 14
 At the time of the conveyance, a first mortgage encumbered the property in the principal amount of $800,000. The conveyance of the property was subject to the existing mortgage. The partnership did not assume the mortgage. In exchange for the conveyance, the partnership agreed to issue to AG a promissory note in the amount of $128,571, which was subject to reduction through capital contributions made from the two corporate entities and amounts otherwise due the partnership under the promissory note. The partnership credited AG's capital account with $130,000, which the parties agreed was the value of the property transferred for the purpose of the partnership's books and records. As a limited partner, AG received a thirty percent share in the partnership and the right to thirty percent of any profits or losses it might generate.
 
 
 15
 Notwithstanding the above transfer, AG argued that it instructed Jackson to continue his efforts to market the property, claiming that the partnership would have been interested, at least through the end of June, 1990, in any offer to purchase the property for $1.6 million. Jackson, however, testified that after May 31, 1990, he stopped trying to sell the property because he felt that "the property had already been sold." No one offered to buy the property for the asking price of $1.6 million.
 
 
 16
 On March 5, 1990, Jackson sent a letter to Fletcher Steele of AG regarding the property stating:
 
 
 17
 In consideration of the set of unusual circumstances related to the interest of this prospect whom I introduced to you on February 25, 1990, Southpace Properties is agreeable to a flat fee of $50,000 should a contract be fully executed on or before March 15, 1990.
 
 
 18
 In subsequent letters from Jackson to Steele dated March 29, 1990, and April 24, 1990, Jackson indicated that Southpace would expect full payment of the six percent commission based on the sale to the Stephens Group. Thereafter, AG offered to pay Southpace a $15,000 fee. In a letter dated May 10, 1990, Jackson, on behalf of Southpace, rejected the offer based on the terms of the Listing Agreement and Southpace's belief that it had "delivered a ready, willing, and able buyer."
 
 II. PROCEDURAL HISTORY
 
 19
 Southpace, appellant and cross-appellee, filed this lawsuit on July 11, 1990, in the Circuit Court of Jefferson County, Alabama. Originally, the complaint alleged a single count for breach of contract. On August 30, 1990, AG, appellee and cross-appellant, filed a notice of removal to federal court based on diversity jurisdiction. On September 13, 1990, Southpace filed a motion to remand the case to state court, which the district court denied.
 
 
 20
 On September 18, 1990, AG filed its original answer, followed by a January 11, 1991, amended answer, indicating that defendants Chris Turner and Robert Chambers were no longer partners in AG, and that AG had entered into a joint venture or partnership with respect to the property at issue. On October 2, 1991, AG filed a motion for summary judgment. On November 22, 1991, Southpace filed an amended complaint, alleging a claim based on quantum meruit. On December 31, 1991, AG answered the amended complaint.
 
 
 21
 The district court partially granted AG's motion for summary judgment, finding that AG's conveyance of the property to the partnership did not constitute a "sale or exchange" as contemplated under the Listing Agreement. The district court, however, found that in conveying the property to the partnership, AG withdrew the property from the market in breach of the Listing Agreement. The district court, however, denied recovery to Southpace of the $96,000 commission; instead, it informed Southpace that it may recover damages, excluding the $96,000 commission, based on theories of breach of contract or quantum meruit. In an order dated September 18, 1992, the district court awarded Southpace $35,400 based on Jackson's reasonable hourly rate of $100 times the 354 hours Jackson devoted to rendering services under the Listing Agreement. Southpace has brought this appeal, and AG has cross-appealed.
 
 III. CONTENTIONS
 
 22
 Southpace contends that the district court properly found that AG breached the Listing Agreement, but erred in failing to award it a broker's commission and a reasonable attorney's fee. AG contends that the district court erroneously determined that it breached the Listing Agreement when it conveyed the property as part of a joint venture. AG, however, contends that the district court properly declined to award Southpace a broker's commission and an attorney's fee.
 
 IV. ISSUES
 
 23
 We must determine whether the district court properly found that AG breached the Listing Agreement. If so, we must determine whether Southpace was entitled to a commission and a reasonable attorney's fee.
 
 V. STANDARD OF REVIEW
 
 24
 On appeal, we review de novo a district court's grant of summary judgment, viewing the evidence in the light most favorable to the nonmoving party. Key West Harbour v. City of Key West, Florida, 987 F.2d 723, 726 (11th Cir.1993).
 
 VI. DISCUSSION
 A. Breach of Contract
 
 25
 Our first inquiry is whether AG breached the Listing Agreement. AG argues that the district court's ruling that it withdrew the property from the market is contrary to the evidence. At a minimum, argues AG, the issue of breach is a jury question.
 
 
 26
 Southpace argues that the district court properly determined as a matter of law that AG withdrew the property from the market, thereby breaching the Listing Agreement. In the alternative, Southpace argues that AG's transfer of the property to the partnership effectively prevented Southpace from selling or exchanging the property in violation of the Listing Agreement.
 
 
 27
 When ruling on the motion for summary judgment, the district court ruled as a matter of law that based upon the facts before it AG's conveyance of the property to the partnership did not constitute a "sale or exchange" as contemplated in the Listing Agreement. The district court ruled that Alabama law defines a sale as the transfer of personal property in exchange for valuable consideration. Martin v. Watts, 513 So.2d 958 (Ala.1987). Although it is clear that AG transferred the property to the partnership by warranty deed, the district court ruled that this transaction did not constitute a "transfer" because, in this case, the transferee is a partnership in which the property owner had an interest. SeeCooley Investment Co. v. Jones, 780 P.2d 29 (Colo.Ct.App.1989), and McElhinney v. Belsky, 165 Pa.Super. 546, 69 A.2d 178 (1949). Quoting from a Pennsylvania case, the district court concluded that a partnership is not an entity separate and distinct from the parties that compose it. McElhinney, 165 Pa.Super. at 551, 69 A.2d 178. Because AG retained an interest in the subject property through its right to receive thirty percent of the partnership profits, the conveyance did not constitute a transfer or sale. Thus, because the partnership to which AG conveyed title is not a separate and distinct entity from AG, the conveyance is not a "true transfer," but is rather a "change merely in its nature and incidence." The district court went on to find that the conveyance of the property was not a "transfer" because AG did not receive valuable consideration in exchange for the transaction.
 
 
 28
 After finding that the evidence failed to support the argument that the real property was "sold," the district court concluded that AG, by conveying the property to the partnership, withdrew the property from the market, thereby preventing Southpace from selling or exchanging the property. These activities, according to the district court, breached the Listing Agreement. We agree with the district court.
 
 
 29
 In paragraph 2(c) of the Listing Agreement, AG agreed that it would not "withdraw the Property from sale or exchange or otherwise prevent the Broker from selling or exchanging the Property." The record discloses that on May 15, AG conveyed title to the property to the partnership with a warranty deed. Thus, even though AG retained an interest in the property as a limited partner, the partnership became the owner of record.
 
 
 30
 AG argues that the Listing Agreement does not require that it be the seller of the property because paragraph 6 provides that if the property is sold "by the Owner or anyone else, the Broker will be entitled to a commission...." It is undisputed, however, that the Listing Agreement was solely between AG and Southpace. The partnership, not a party to the Listing Agreement, was not contractually bound under the terms of the Listing Agreement. Thus, had Southpace produced a ready and willing buyer, the partnership, as the owner of record, would not have been obligated under the Listing Agreement to pay Southpace its six percent commission. Clearly, AG's conveyance of title to the partnership withdrew the property from the market. Thus, we hold, as did the district court, that AG breached the Listing Agreement.
 
 B. Broker's Commission
 
 31
 Having concluded that AG breached the Listing Agreement, we must determine whether Southpace is entitled to a commission. According to paragraphs 2(c) and 6 of the Listing Agreement, if AG breaches the Listing Agreement, Southpace is entitled to a six percent commission on the listing price of $1.6 million.
 
 
 32
 The district court ruled that under Alabama law, "penalty provisions are void as against public policy and ... courts are 'disposed to lean against any interpretation of a contract which will make the provision one for liquidated damages and, in all cases of doubtful intention, will pronounce the stipulated sum a penalty.' " Milton Construction Co., Inc. v. State Highway Dept., 568 So.2d 784, 789 (Ala.1990) (quoting Camelot Music, Inc. v. Marx Realty & Improvement Co., 514 So.2d 987, 990 (Ala.1987)). "A penalty is in essence a security for performance designed to punish one party for breach of contract, whereas a liquidated damages provision is a sum to be paid in lieu of performance (a sum that the parties agree upon as an adequate assessment of damages that will result from a possible breach)." Milton Construction, 568 So.2d at 790. Alabama case law has developed three criteria to determine whether a stipulated damages clause is liquidated damages or a penalty. "First, the injury caused by the breach must be difficult or impossible to accurately estimate; second, the parties must intend to provide for the damages rather than for a penalty; and, third, the sum stipulated must be a reasonable pre-breach estimate of the probable loss." Milton Construction, 568 So.2d at 790 (quoting Camelot Music, 514 So.2d at 990). "If one of these three criteria is not met, the clause must fail as a penalty." Milton Construction, 568 So.2d at 790.
 
 
 33
 After applying the three criteria to the facts of this case, the district court determined that paragraphs 2(c) and 6 of the Listing Agreement were penalty clauses. First, the district court found that paragraph 6 providing for recovery of "any other cost or expenses relating to or arising from [a] breach," adequately compensated Southpace for AG's conveyance of the property to the partnership. Second, the district court concluded that because the provisions of the Listing Agreement relating to the commission were standard form agreement terms of Southpace's Listing Agreement, rather than negotiated contract terms, the parties did not bargain for the provisions prior to executing the agreement. Third, the district court concluded that the sum stipulated did not reasonably approximate the actual injury because Southpace's demand for a full commission is based upon the speculative assumption that had AG not transferred the property, it would have located a ready and willing buyer. Upon a review of the record, we agree with the district court that paragraphs 2(c) and 6 constitute penalty provisions under Alabama law.
 
 
 34
 In this case, the damages clauses in paragraphs 2(c) and 6 clearly fail the third criterion--that the sum stipulated be a reasonable pre-breach estimate of the probable loss. This third criterion "is applied after the fact and measures whether the sum stipulated ... bears a rational relation to the injury incurred." Milton Construction, 568 So.2d at 791. The Listing Agreement provides for a full commission plus costs and expenses if AG breaches the Listing Agreement. Without doubt, allowing Southpace to recover a commission plus costs and expenses for AG's breach would overcompensate Southpace for the injury it suffered. In fact, Southpace could recover more upon AG's breach, without having located a ready and willing buyer, than if Southpace had actually sold the property for the listing price of $1.6 million. This results in "disproportionate, unreasonable compensation." SeeMilton Construction, 568 So.2d at 791. Thus, we conclude that the sum stipulated is an unreasonable pre-breach estimate of the probable loss. Having determined that at least one of the three criteria is not met, we hold that the district court did not err in ruling that paragraphs 2(c) and 6 of the Listing Agreement are void as penalty clauses.
 
 C. Attorney's Fee
 
 35
 Still, we must determine whether Southpace is entitled to a reasonable attorney's fee based upon AG's breach of the Listing Agreement. Paragraph 6 of the Listing Agreement provides that "in the event of any material breach of this Agreement by the Owner, Broker shall be entitled to recover its commission together with a reasonable attorney's fee and any other costs and expenses related to or arising from such breach." Although acknowledging its uncertainty as to whether Southpace was entitled to an attorney's fee, the district court declined to award Southpace an attorney's fee because it felt that the attorney's fee provision was "tied to" the recovery of the commission, which was void as a penalty. The district court, however, indicated that Southpace would be entitled to an attorney's fee if it were a separate element of damage.
 
 
 36
 We agree with the district court that paragraph 6, which provides for a full commission, costs and expenses, and an attorney's fee in the same paragraph, ties these elements together. Accordingly, we hold that the district court did not err in ruling that Southpace is not entitled to a reasonable attorney's fee for AG's breach of the Listing Agreement.*
 
 VII. CONCLUSION
 
 37
 We affirm the district court's determination that AG's conveyance of the property to the partnership breached the Listing Agreement. Additionally, we affirm the district court's ruling that allowing Southpace to recover a full commission in addition to costs, expenses, and attorney's fees based upon AG's breach of the Listing Agreement is void as a penalty clause.
 
 
 38
 AFFIRMED.
 
 
 39
 FAY, Circuit Judge, concurring in part and dissenting in part:
 
 
 40
 Most respectfully, I agree with the majority that there clearly was a breach of contract but I also conclude that there was a "sale or exchange" of the property as contemplated by the Listing Agreement.
 
 
 41
 The majority cites Cooley and McElhinney for the proposition that AG's conveyance of the property to a newly formed partnership in which it was a partner was not a transfer or sale which entitled the broker to collect his full commission. However, I find both cases distinguishable.
 
 In Cooley, the Court held:
 
 42
 Under the agreement between the defendant and Larkspur,[1] defendant received only a credit for a capital contribution of $500,000, which represented the market value of the property. She received no other compensation; there was no unconditional promise on the part of the partnership, or anyone else, to pay her anything; there was no security given to her; and she was not entitled to receive any interest payments on her capital account. Defendant's only right was to receive a share of future profits, if any.[2]
 
 
 43
 Cooley, 780 P.2d at 31. (Emphasis added).
 
 
 44
 As stated by the majority in its rendition of the facts, "[i]n exchange for the conveyance, the partnership agreed to issue to AG a promissory note in the amount of $128,571...." (Emphasis added). In addition to the promissory note, AG received a $130,000 capital credit on the partnership books and a thirty percent share of the profits or losses.
 
 
 45
 Here, it is clear that AG received more for the conveyance than did either of the defendants in Cooley or McElhinney. Specifically, AG holds a promissory note for $128,571 to which legal rights attach. AG could conceivably sue to enforce payment on the note which is over and above the capital credit and share of profits. The asset value and legal rights incident to the promissory note coupled with the capital credit and right to future profits constitutes the "valuable recompense" prong of the McElhinney test used to determine if a sale or exchange took place. Accordingly, I would hold that a "sale or exchange" as contemplated by the Listing Agreement took place and the broker was entitled to a commission thereon.
 
 
 46
 I also disagree with the majority's holding that the award of attorney's fees and costs was "tied to" the void penalty provision in paragraph 6 of the Listing Agreement. "Attorney's fees are recoverable when provided for in a contract." Knox Kershaw, Inc. v. Kershaw, 552 So.2d 126, 129 (Ala.1989) (citations omitted). The attorney's fees and costs provision was clearly contemplated by the parties and it can be easily excised from the remainder of paragraph 6 which the District Court found void as a penalty provision. Thus, I would hold that under general principles of contract law, the broker is entitled to collect attorney's fees and costs expended in the enforcement of the agreement.
 
 
 
 *
 Southpace also contends that the district court denied it the opportunity to proceed at trial under alternate theories of quantum meruit and breach of contract, and that the district court erred in granting AG's motion in limine involving Southpace's expert's testimony as to the value of Jackson's services to AG. Because the record indicates that the district court considered both theories of damages and that the expert's testimony was unnecessary, particularly in light of Jackson's own testimony relating to his reasonable hourly rate for services rendered, we find it unnecessary to discuss these issues further
 
 
 [1]
 Larkspur Mountain, Ltd. is the partnership in which the defendant was a partner and to which she conveyed her property as a capital contribution
 
 
 [2]
 The facts of McElhinney parallel those of Cooley in that the defendant only received credit for a capital contribution and the right to share in future profits. McElhinney, 165 Pa.Super. at 550, 69 A.2d 178. There was no other exchange of consideration