**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 96-9114
_____

D. C. Docket No. 1:95-CV-351-WCO

NANCY ARRINGTON,

Plaintiff-Appellant,

versus

COBB COUNTY, ROBERT HIGHTOWER, in His Official Capacity as Director of Cobb County's Public Safety Commission, NATHAN WILSON, in His Official Capacity as Fire Chief of Cobb County's Department of Fire and Emergency Service,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(April 24, 1998)**

Before TJOFLAT, BIRCH and MARCUS[*], Circuit Judges.

## BIRCH, Circuit Judge:

In this appeal, we determine whether material questions of fact

exist with regard to plaintiff-appellant Nancy Arrington's gender

_____

[*]Honorable Stanley Marcus, U.S. District Judge of the Southern District of Florida, sitting by designation as a member of this panel when this appeal was argued and taken under submission. On November 24, 1997, he took the oath of office as a United States Circuit Judge of the Eleventh Circuit.

discrimination claims against defendant-appellees Cobb County, Robert Hightower, and Nathan Wilson. The district court granted summary judgment in favor of appellees after finding that Arrington had failed to show that she had been discriminated against on the basis of her gender. For the reasons that follow, we REVERSE.

## I.  BACKGROUND

From 1984 to 1994, Arrington held the job of Assistant Fire Chief for the Cobb County Fire Department. In 1994, however, appellees eliminated the Assistant Fire Chief position and demoted Arrington to Lieutenant. This case stems from appellees' decision to demote Arrington rather than to promote her to Fire Chief or transfer her to Deputy Chief. Because this appeal is from the district court's grant of summary judgement, we view the facts in the light most favorable to Arrington. See Southpace Properties, Inc. v. Acquisition Group, 5 F. 3d 500, 504 (11th Cir. 1993).

Prior to her demotion in 1994, Arrington served for over twenty years in a variety of roles within the Cobb County Fire Department. Although County rules during the 1970's prohibited women from becoming firefighters, Arrington joined the Department in 1971 as a secretary, later receiving promotions to Fire Prevention Officer (1978-79) and Fire Lieutenant in charge of Fire Prevention (1979-84). When Cobb County lifted its prohibition on female firefighters in 1980, Arrington became a certified firefighter but never took an active firefighting position.

In 1984, Arrington won promotion to the position of Assistant Chief for Administration after submitting to a competitive examination.[1] In choosing Arrington over three other candidates for the Assistant Chief position, Fire Chief W. D. Hilton relied on Arrington's "performance on the examination, her excellent job performance . . . and her knowledge of fire department operations

---

[1] During Arrington's decade in this position, her title took various forms, including Assistant Director, Administration. For the sake of clarity and convenience, we refer to her position throughout as "Assistant Chief for Administration."

and administration." R2-26 Exh. A ¶ 10 at 3 (Hilton Aff.).[2]  Hilton promoted Arrington to Assistant Chief with the concurrence of the County Manager and the Civil Service Board.

In her position as Assistant Chief for Administration, Arrington had a number of official responsibilities.  As the chief administrator for the Department, Arrington supervised and assessed all six of the Department's Colonels, who regularly reported to Arrington regarding their respective "Training," "Extinguishment," "Fire Marshal," "Budget," "Research and Development," and "Building and Fleet Maintenance" responsibilities.  In addition, Arrington assisted Chief Hilton in preparing and presenting the Department's budgets, wrote technical reports, met with the County Manager and County Board of Commissioners, and spoke to other professional and community groups.  Further, Arrington managed a variety of the

---

[2]Appellees state throughout their brief that Arrington did not compete for her position, without ever citing us to Chief Hilton's sworn statement describing her promotion and refuting appellees' assertion.  Appellees would have been better served, on this and other factual points, to have brought all of the relevant evidence in the record to our attention.

Department's special projects. In 1985, for example, Arrington oversaw the development of an Emergency Medical Services (EMS) program that soon "was reputed to be the best in the State and one of the best in the Southeast." Id. ¶ 12 at 4. Similarly, Arrington lead the Department's successful 1988 effort to reduce its insurance classification, assisting the Department's cause "greatly" with her "knowledge of all aspects of firefighting, including administrative and operations knowledge." Id. ¶ 15 at 5. At the same time, Arrington was responsible for "a territory equal to [that of] other management staff members to be on call for major fires and emergencies." Id. ¶ 21 at 7.

Beyond her official portfolio, Arrington also assumed a broad range of additional responsibilities during her tenure as Assistant Chief. Although the County technically had an Assistant Chief for Operations, H. K. Nixon, a management study of the Department found in 1992 that Arrington was functioning as Chief Hilton's second-in-command for operations as well as administration:

> The Assistant Director, Administration [Arrington] is performing outside the boundaries of the job description as it was originally designed. The current incumbent is performing administrative and operational decisions . . . .
>
> . . . .
>
> The job description is written for management of the "Administrative Services Division." However, the current incumbent is serving as second in command and assisting in supervising and controlling all activities of the Fire Department (i.e., supervising/managing line and staff colonels). These are responsibilities of the Assistant Director, Operations' job description.

R2-26 Exh. C at 2, 6.[3] In response to this report, Chief Hilton wrote to the County Manager not only that he agreed that Arrington had assumed an operations-related role beyond her title, but also that he intended to expand her official job description to encompass the duties of the Assistant Chief for Operations (once Nixon retired). See R2-26 Exh. D. In fact, Chief Hilton has explained that he consciously made Arrington the *de facto* head of the Department upon his becoming President of the International Association of Fire Chiefs in

---

[3]This management audit was conducted by the County's Personnel Department, rather than by officials from within the Fire Department.

6

1990. See R2-26 Exh. A ¶ 17 at 6 (Hilton Aff.) ("In my absence Assistant Chief Arrington performed the duties of Fire Chief and ran the department for me.").[4]

Moreover, all of the evidence before the court indicates that Arrington excelled as Assistant Chief. Although appellees insist throughout their brief that Arrington had no right, as someone who did not rise through the ranks, to hold a high post in the Department, they have not offered any evidence that Arrington ever performed her official or unofficial duties as Assistant Chief in anything less than an exemplary manner. Indeed, appellees have made no attempt to refute Chief Hilton's assessment that "Nancy Arrington, throughout her tenure with the County Fire Department[,] has earned the

---

[4]Appellees apparently do not dispute that Arrington exercised a broad range of duties as Assistant Chief. Appellees advance no argument or evidence undercutting the County's report on Arrington's operational activities, nor do they offer any argument or evidence contradicting Chief Hilton's assessment of Arrington's role within the Department.

7

respect of her peers, her department, and fire officials throughout the State and Country." Id. ¶ 19 at 6.

In 1993, Chief Hilton announced his retirement (effective in 1994) as the County moved toward a restructuring of its public safety agencies. Central to this reorganization effort, the County planned to bring its separate Police, Fire, and Corrections Departments within one, consolidated Public Safety Department, thereby reducing administrative and other inefficiencies. Leading the County's reorganization effort, the newly-installed Public Safety Director, Robert Hightower, had responsibility for selecting the County's new Fire Chief. After conducting a series of interviews, Hightower chose Nathan Wilson as the new Chief, passing over Assistant Chief Arrington and eight other candidates for the position.[5] As an experienced firefighter, Wilson had risen through the ranks of

---

[5]Peter Fanton and Donna Carter also interviewed each of the candidates for Fire Chief. Hightower, however, had the responsibility for actually selecting the new Fire Chief, with the concurrence of the Board of Commissioners.

the Department, from firefighter in 1965 to Colonel at the time of his selection as Fire Chief.   In explaining and defending Wilson's promotion over Arrington in the course of this suit, Hightower has cited Arrington's lack of "operational experience" as the key element that rendered her unqualified for the position.

Once Wilson assumed his new position as Chief, he joined Hightower in determining how to integrate the County's Fire Department into the new Public Safety Department.  Of particular relevance to this case, Wilson and Hightower decided to replace the two Assistant Fire Chief positions (Administration and Operations) with a new, consolidated second-in-command position of "Deputy Chief."[6]  Upon the

---

[6]Hightower and Wilson's motives for this element of their reorganization plan are in dispute and are addressed below.  Hightower and Wilson contend that the new Deputy Chief position was designed primarily as an "Operations" job, with most of the administrative responsibilities of the former Assistant Chief for Administration shifting to a centralized administrative staff for the entire Public Safety Department. Arrington, however, contends that the Deputy and Assistant Chief

Board of Commissioners' acceptance of Wilson and Hightower's restructuring plan, Wilson chose David Hayes to serve as the new Deputy Chief, demoting Arrington to Lieutenant.[7] Like Wilson, Hayes had risen through the ranks from firefighter to Colonel before his most recent promotion to Deputy Chief, and Wilson has explained and defended his passing over of Arrington as a reflection of her lack of "operational experience" in fighting fires.[8]

Following her demotion, Arrington brought suit against the County, Hightower, and Wilson in the district court. Specifically, Arrington alleged that appellees had discriminated

---

jobs are essentially the same, and that appellees used the ongoing restructuring effort to replace her with Hayes, discriminating against her on the basis of her gender.

[7]Hightower and Fenton also participated in interviewing the candidates for Deputy Chief, but it was Wilson who actually selected Hayes for the job. The County's civil service law required Arrington's demotion to her last previous rank (Lieutenant) upon the County's elimination of her Assistant Chief position.

[8]Furthermore, Cobb County, Hightower, and Wilson have insisted before this court that Arrington was not even qualified for her former Assistant Chief position, though they offer no evidence to support this assertion.

against her on the basis of her gender in (1) denying her the Fire Chief position, (2) denying her the Deputy Chief position, and (3) demoting her to Lieutenant, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq, and the equal protection clause of the Fourteenth Amendment (enforced through 42 U.S.C. § 1983). Further, Arrington claimed that the appellees had violated the Equal Pay Act, 29 U.S.C. § 206(d), by (1) paying her alleged "successor" Hayes a higher salary as Deputy Chief than she had received for her "substantially equal" work as Assistant Chief and (2) paying her less as a Lieutenant than her male Lieutenant peers.

After appellees moved for summary judgment, the district court assigned the case to a magistrate judge for evaluation. In a Report & Recommendation ("R & R"), the magistrate judge suggested that the district court: (1) grant summary judgment in favor of appellees on Arrington's Title VII "Fire Chief" claim, because Arrington had failed to file a timely EEOC charge

11

regarding the appellees' failure to promote her to that position; (2) grant summary judgment in favor of appellees on Arrington's § 1983 Fire Chief equal protection claim, based on the same untimeliness rationale; (3) proceed to trial on Arrington's Title VII and § 1983 claims regarding the Deputy Chief position, on the ground that material issues of fact existed with regard to Arrington's qualifications for that position;[9] (4) grant summary judgment on behalf of appellees on Arrington's claims of discriminatory demotion to Lieutenant, on the ground that the County's civil service law required her demotion to her previous rank (Lieutenant) upon the elimination of her job as Assistant Chief; (5) deny summary judgment on Arrington's Equal Pay Act claim of discrepancy between Deputy Chief Hayes's salary and her former salary as Assistant Chief, because of disputed material facts; and (6) grant summary judgment on behalf of appellees on Arrington's Equal

---

[9]Unlike Arrington's Title VII Fire Chief claims, her Title VII Deputy Chief claims have not suffered from any timeliness problems.

12

Pay Act claim regarding alleged discrepancies between her current pay and that of other Lieutenants, because any inequalities regarding Arrington's current pay were required by the County's even-handed civil service rules.

Following the magistrate judge's initial R & R, Arrington objected to the district court that the timing of her EEOC complaint was irrelevant to her § 1983 claim for violations of her constitutional right of equal protection. Subsequently, the magistrate judge submitted a Supplemental R & R ("SR & R") addressing Arrington's concerns. In this SR&R, the magistrate judge agreed with Arrington that her § 1983 Fire Chief claim could not be dismissed on the basis of her untimely EEOC charge. Upon reaching the merits of Arrington's § 1983 Fire Chief claim, however, the magistrate judge found, sua sponte, that there was no evidence that the County had any "policy" or "custom" of gender discrimination that might have caused Arrington to be denied the Fire Chief position. Relying on

13

Monell v. Dep't of Soc. Serv., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), and its progeny, the magistrate judge therefore again recommended that the district court grant summary judgment against Arrington on her Fire Chief claims against the County and Hightower.[10]    In response to the magistrate judge's SR&R, Arrington agreed that Monell required the district court to dismiss her § 1983 Fire Chief claim against the County but objected to the magistrate judge's unexplained additional recommendation of dismissal against Hightower, who Arrington insisted she was suing in his personal capacity as well as in his official capacity.  Arrington did not object to the magistrate judge's recommendation for summary judgment against her on her Title VII Fire Chief claims, her § 1983 Fire Chief claim against the County, her discriminatory demotion claims, or her Equal Pay Act claim

_____

[10]We note that no Monell issue has arisen with regard to Arrington's § 1983 Deputy Chief claims.  On remand, the district court may wish to consider whether to apply Monell to Arrington's § 1983 Deputy Chief claims.

14

concerning alleged inequalities between herself and her Lieutenant peers.

Despite the magistrate judge's recommendation that the district court proceed to trial on several of Arrington's allegations, the district court granted summary judgment for appellees on all of Arrington's claims. On Arrington's § 1983 Fire Chief claim against Hightower, the district court held that its judgment against Arrington on her Title VII Fire Chief claims (because of her untimely EEOC charge) required it to grant summary judgment also against Arrington on all of her § 1983 Fire Chief claims, lest Arrington use § 1983 to circumvent the administrative requirements for Title VII actions. On Arrington's Deputy Chief claims, the district court ruled that Arrington had established a prima facie case of sex discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Nonetheless, the district court granted summary judgment for appellees because it found that

Arrington had produced no evidence that appellees' proffered legitimate, nondiscriminatory reason for their actions (*i.e.*, Arrington's lack of "operational experience") masked an illegal motive. Finally, on Arrington's remaining Equal Pay Act claim, the court granted summary judgment for appellees because it found that the positions of "Deputy Chief" and "Assistant Chief for Administration" were not substantially equal.

## II.  DISCUSSION

Summary judgment is only appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56 (c). In reviewing the district court's grant of summary judgment, we review both its factual findings and its legal reasoning <u>de novo</u>. <u>See, e.g.</u>, <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1526 (11th Cir. 1997), <u>cert. denied sub nom.</u>, <u>Combs v. Meadowcraft</u>, __ U.S., __, __ S. Ct. __, __ L. Ed. 2d __

(1998).[11] We view the evidence in the light most favorable to the non-moving party, using the same legal standards appropriate for the district court. See id. In this appeal, Arrington contests the district court's grant of summary judgment for appellees on (1) her § 1983 Fire Chief claim against Hightower, (2) her Title VII and § 1983 Deputy Chief claims against all three appellees, and (3) her Equal Pay Act claim against all three appellees regarding salary disparity between the Deputy and Assistant Chief positions. We address each of Arrington's bases for appeal in turn.

A. THE FIRE CHIEF POSITION

The district court granted summary judgment on Arrington's § 1983 claims for significantly different reasons from those recommended by the magistrate judge in its SR &

---

[11]Appellees' assertion that we should subject the factual findings of the district court only to a clearly erroneous standard of review finds no support in the precedents of this court. We find appellees' inability to discuss even the standard of review in a straightforward and forthcoming manner to be disheartening.

R.  Instead of relying on a Monell finding that the County did not have a "policy" or "custom" of discrimination, the district court based its ruling on the principle that a plaintiff may not use § 1983 to circumvent the administrative requirements for a Title VII claim.  On appeal, Arrington argues that the district court erred because her § 1983 claim is based on a violation of her constitutional equal protection rights and not on any statutory violation of Title VII.

To prevail on a claim under § 1983, a plaintiff must demonstrate both (1) that the defendant deprived her of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law.  See Willis v. University Health Serv., 993 F.2d 837, 840 (11th Cir. 1993).  Of course, an allegation of a Title VII violation cannot provide the sole basis for a § 1983 claim.  See Allen v. Denver Pub. Sch. Bd., 928 F.2d 978, 982 (10th Cir. 1991) ("[S]ection 1983 cannot be used to assert the violation of rights created only by Title

VII."); Hervey v. City of Little Rock, 787 F.2d 1223, 1233 (8th Cir. 1986) (same). As the district court observed, a plaintiff cannot bootstrap an untimely Title VII claim by bringing a § 1983 action based only on a statutory violation of Title VII. Cf. Great Am. Fed. Sav. & Loan Assoc. v. Novotny, 442 U.S. 366, 375-78, 99 S. Ct. 2345, 2350-52, 60 L. Ed. 2d 957 (1979) (stating that plaintiffs may not bypass the Title VII administrative process by enforcing their statutory rights under Title VII through § 1985). Arrington, however, does not rest her § 1983 Fire Chief claim on any alleged violation of Title VII. Instead, Arrington satisfies the first element of § 1983 by alleging that Hightower violated her Fourteenth Amendment right of equal protection. See Johnson v. City of Fort Lauderdale, 114 F.3d 1089, 1092 (11th Cir. 1997), reh'g en banc denied, 124 F.3d 1372 (1997) (holding that Title VII does not preempt a Fourteenth Amendment cause of action for employment discrimination under § 1983); Hervey, 787 F.2d at

1233 (holding that a plaintiff whose Title VII claim is time-barred is "limited to proving that the [defendant] violated her equal protection rights under the fourteenth amendment in order to recover under § 1983.").[12] Thus, we conclude that the district court erred as a matter of law by granting summary judgment to the appellees on this issue.[13] Accordingly, we reverse the district court's grant of summary judgment on Arrington's § 1983 Fire Chief claim against Hightower and

---

[12]There is no dispute that Hightower acted under the color of state law in denying Arrington the promotion to Fire Chief, satisfying the second element of § 1983.

[13]In their brief for this court, appellees ignore the district court's confusion regarding the relationship between Title VII and § 1983; appellees strangely declare that the district court based its decision on the merits of Arrington's § 1983 Fire Chief claim. Appellees' contention that the district court reached the merits of this issue is, at best, misleading. Because the district court did not discuss the magistrate judge's decision on the merits of appellants' § 1983 Fire Chief claims, we decline at this stage to evaluate the merits of Arrington's remaining Fire Chief claim against Hightower. We note, however, that Arrington has insisted that she seeks to pursue Hightower in his personal capacity. Given our liberal system of notice pleading, and appellees' apparent understanding throughout their submissions to the magistrate judge and district court that Arrington sought to hold Hightower liable in his personal as well as in his official capacity, we expect that the district court will allow Arrington to amend her complaint as necessary to reflect the true nature of her claims. Cf. Espanola Way Corp. v. Meyerson, 690 F.2d 827, 829 (11th Cir. 1982) (rules of notice pleading apply to complaints in § 1983 actions).

20

remand this issue to the district court for further proceedings consistent with this opinion.[14]

## B. THE DEPUTY CHIEF POSITION

Arrington argues that material questions of fact exist with regard to her claims that appellees discriminated against her on the basis of her gender in denying her the Deputy Chief position. For Title VII and § 1983 gender discrimination claims, the order and allocation of proof are well established.[15] First, the plaintiff must prove a prima facie case of discrimination by a preponderance of the evidence. Second, if the plaintiff makes out a prima facie case, the defendant must produce a

---

[14]We note again that Arrington has conceded that the district court's judgment on her § 1983 Fire Chief claim against the County is justified on the alternative, <u>Monell</u> grounds relied upon by the magistrate judge. Arrington, therefore, has not appealed the district court's grant of summary judgment for the County on this claim. On remand, the only remaining claim based on Arrington's failure to receive promotion to Fire Chief will be her § 1983 claim against Hightower.

[15]This framework would also apply to any evaluation of the merits of Arrington's § 1983 Fire Chief claim against Hightower, discussed above.

21

legitimate, non-discriminatory reason to explain the challenged action. Third, should the defendant carry this burden, the plaintiff must show by a preponderance of the evidence that the defendant's proffered explanation was a pretext for discrimination. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981).

Since Arrington has produced no direct evidence that appellees' harbored an illegal motive for refusing her the Deputy Chief position, she must rely on the test set out in McDonnell to establish her prima facie case of discrimination through circumstantial evidence. Under this four-pronged test, Arrington must show that (1) she is a member of a protected class, (2) she applied and was qualified for the Deputy Chief position, (3) she was rejected in spite of her qualifications, and (4) the Deputy Chief position went to an equally or less qualified person who was not a member of a protected class.

See McDonnell, 411 U.S. at 802, 93 S. Ct. at 1824; Batey v. Stone, 24 F.3d 1330, 1334 n.11 (11th Cir. 1994).[16]  Plainly, Arrington is a member of a protected group (women), did not receive the position at issue (Deputy Chief), and lost the position at issue to a person who was not a member of a protected class (the new, male Deputy Chief, Hayes).

Appellees, however, argue that Arrington was not qualified for the Deputy Chief position because she lacked the "operational experience" necessary for the proper performance of the job.  As part of the County's reorganization of its public safety agencies, the appellees contend, the new Deputy Chief must perform operational tasks formerly assigned to the Assistant Chief for Operations, while the administrative duties of the former Assistant Chief for Administration have been largely reassigned to the Public Safety Department's central

---

[16]Although the McDonnell case concerned only Title VII, its analytical framework for the establishment of a prima facie case of employment discrimination applies equally to discrimination claims brought under § 1983.  See, e.g, Burns v. Gadsen State Community College, 908 F.2d 1512, 1518 (11th Cir. 1990) (per curiam).

administrative office.   Thus, appellees contend both that Arrington cannot prove a prima facie case of discrimination and that they had a legitimate, nondiscriminatory reason for refusing to interview Arrington for the Deputy Chief position: her lack of operational experience rendered her unqualified to shoulder the operational responsibilities the new position demanded.[17]

If Arrington had not been able to provide the district court with additional evidence of her qualification for the Deputy Chief position, the district court's grant of summary judgment against Arrington might well have been appropriate; without more, it would seem reasonable to us that a Fire Chief might

---

[17]In granting summary judgment for appellees, the district court ruled that Arrington was sufficiently qualified to establish a prima facie case.  Nonetheless, the court ultimately accepted appellees' asserted nondiscriminatory reason for denying Arrington the Deputy Chief position, apparently because Arrington was unable to rebut appellees' explanation with direct evidence that appellees' acted with a discriminatory motive.  Given that appellees' asserted reason is the exact converse of one element of a prima facie <u>McDonnell</u> case of discrimination, we regret that the district court did not explain further its conclusion that Arrington was "arguably qualified" but that there was no material question of fact regarding appellees' contention that she was not qualified.

24

choose to pass over a candidate for Deputy Chief who did not have first-hand experience fighting fires. Arrington, however, has presented circumstantial evidence and testimony that could lead a reasonable jury to conclude that the appellees' explanations mask an illegitimate, discriminatory motive.

Although the appellees maintain that the job of Deputy Chief is a new, "operational" position, Arrington's evidence appears to demonstrate that Deputy Chief Hayes is in fact performing the same tasks formerly performed by Arrington as Assistant Chief. Shortly after his promotion, Hayes filled out a "Position Description Questionnaire" in which he detailed his duties as Deputy Chief and the time he spent on each:

> All sections except Fire Prevention and Arson answer directly to me. As an administrative staff member I must attend various meetings both outside and inside the department. . . . [50%]

> The Chief or I must approve all purchase requests. . . . We monitor activities from month to month to make sure we stay within the budgeted funds and must take

corrective actions if necessary to correct overages. . . . [8%]

The chief and I are responsible for the total preparation of our $28,000,000 budget.  This includes proposals for new equipment or programs as well as establishing ongoing budget proposals from existing data as well as known factors that may influence expenditures. . . . [5%]

I oversee the Emergency Medical Services program of the county. . . . [20%]

I answer large or unusual fire and rescue calls on an emergency basis.  Once on the scene I assume responsibility for the incident even if I don't take command of the incident.  [5%]

I am responsible for the writing of many technical papers, reports and projects for the department. . . .  [10%].

From time to time I speak to various outside organizations representing the department. . . . [1%]

I am a member of various committees or organizations including the Cobb County Emergency Medical Services Council, the Excel Alumni Association, and the Georgia Firefighters Burn Foundation. [1%]

R2-26 Exh. M.  Significantly, Arrington performed all of these activities when she served as Assistant Chief.  Like Deputy Chief

Hayes, Arrington supervised and assessed the various section leaders within the Department, and she prepared and policed the Department's budgets. Like Hayes, Arrington also oversaw the County's EMS program; in fact, she was responsible for the program's creation. Moreover, Arrington, like Hayes, was on call to take responsibility for a variety of emergency situations, and she prepared a variety of technical papers and reports. Finally, like Hayes, Arrington commonly represented the Department both before the County Commission and before a variety of public and private groups.[18] Again, past and present statements by Arrington's former superior, former Chief Hilton, call into question appellees' explanations for their behavior. In response to the 1992 personnel study of the Department, for example, Hilton reported that:

---

[18]The appellees have offered no evidence of any significant, specific, "operational" task actually performed by the Deputy Chief that Arrington is not at least arguably qualified to perform or that she has not already actually performed as *de facto* head of the County's Fire Department under Chief Hilton. We also note that it is curious that appellees believed Arrington to be sufficiently qualified for the Fire Chief position to consider her through two rounds of interviews, yet found her to be so lacking in qualification for the Deputy Chief position as to be unworthy of consideration.

[Arrington] works jointly with me to provide the total fire and EMS service to our citizens. Nothing goes out of our building, either to our own people, interdepartment, or to the public, without her approval. She assigns work to the Colonels and makes decisions daily about every phase of our service. There has to be a coordination of daily operations and someone to keep everyone going down the same road and out of the ditches. I depend completely on her to do this and trust her to make any decision necessary in my absence to carry on. She is expected to and very often does present new programs or better ways of doing what we do. This requires research and heavy contact with other fire services organizations.

R2-26 Exh. D at 3. In the same vein, Hilton now states in his affidavit that:

I concur that Nancy Arrington was performing the duties of managing and supervising the operations side of the Fire Department along with being responsible for the administrative aspects of the Department. Nancy Arrington was second in command of the entire Cobb County Fire Department.

R2-26 Exh. A ¶ 22 at 7. Given the striking similarity between the actual responsibilities of current Deputy Chief Hayes and former Assistant Chief Arrington, we have difficulty finding that reasonable minds could not differ concerning appellees' claims that Arrington

was unqualified even to be interviewed for the Deputy Chief position.[19] Thus, we conclude that a jury might reasonably infer that Arrington was qualified for the Deputy Chief position, thereby both establishing the final element of Arrington's prima facie case and significantly undermining the credibility of appellees' asserted nondiscriminatory explanation for their actions.[20]

The only question remaining, then, is whether Arrington may proceed to trial on evidence that only undermines the credibility of appellees' asserted reason for not considering her for the Deputy Chief position, without directly showing that appellees harbored an illegal motive. As this court has repeatedly held, a Title VII plaintiff

---

[19]Significantly, appellees make no attempt to dispute any of this evidence. Instead, appellees rely on the bald proposition that it would be absurd for a person without actual line experience fighting fires to become the second-in-command (let alone the Chief) of a fire department. Although we recognize that such an argument might ultimately persuade a jury, we must view the evidence in the light most favorable to the non-moving party, Arrington. From this perspective, we cannot ignore the substantial evidence from which a jury might reasonably infer that the appellees' emphasis on operational experience was a pretext for gender discrimination.

[20]A plaintiff may rely on the same evidence both to establish her prima facie case and to cast doubt on the defendant's nondiscriminatory explanations. See Carter v. Three Springs Residential Treatment, No. 97-6256, Slip. Op., __ F.3d __, 1115 (11th Cir. 1998).

may defeat a motion for summary judgment by undermining the credibility of a defendant's explanation for its actions:

> [P]roof that a defendant's articulated reasons are false is not *proof* of intentional discrimination; it is merely *evidence* of intentional discrimination. However, *evidence* of intentional discrimination is all a plaintiff needs to defeat a motion for summary judgment. That evidence must be sufficient to create a genuine factual issue with respect to the truthfulness of the defendant's proffered explanation.

Howard v. BP Oil Co., 32 F. 3d 520, 525 (11th Cir. 1994).[21] In this case, Arrington has produced sufficient evidence undermining appellees' explanation for denying her the Deputy Chief position that a reasonable jury might infer that the appellees intentionally discriminated against Arrington, in violation of her Title VII and equal protection rights. Both the appellees and the district court, however, appear to have misread our precedents as to the type of

---

[21]We understand that there may once have been some confusion regarding our court's precedents on this issue. See Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436 (11th Cir. 1996) (criticizing Howard). Today, however, Howard clearly represents the law in this circuit, see Combs, 106 F.3d at 1529-35 (collecting cases), as the author of Isenbergh has subsequently acknowledged, see Evans v. McClain of Ga., Inc., 131 F. 3d 957, 964-65 (11th Cir. 1997) (per curiam).

proof required of a plaintiff in a discrimination case based on circumstantial evidence.[22]  In ruling for the appellees, the district court explained that "Plaintiff has not presented any evidence to suggest that sexual discrimination had anything to do with her not being appointed to the position of Deputy Chief.  Plaintiff's inability to show this is fatal to her effort to avoid a ruling of summary judgment in favor of defendants."  R3-36 at 20.  Requiring such a direct showing of discriminatory intent from Arrington, though, would not only contradict our precedents but would also would make it impossible for a plaintiff to prevail on any discrimination case based solely on circumstantial evidence.  See Combs, 106 F.3d at 1536-38.  Thus, we conclude that the district court has erred both in its assessment of the facts and in its analysis of the law, and we reverse the district court's grant of summary judgment against Arrington on her Deputy Chief claims.

---

[22]Curiously, appellees make no mention in their brief of Howard, Combs, or any of our other precedents supporting Arrington's position on this issue.

31

## C. THE EQUAL PAY ACT CLAIM

To establish a prima facie case under the Equal Pay Act, an employee must show that "an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" Corning Glass Works v. Brennan, 417 U.S. 188, 195, 94 S. Ct. 2223, 2228, 41 L. Ed. 2d 1 (1974); Waters v. Turner, Wood & Smith Ins. Agency, Inc., 874 F.2d 797, 799 (11th Cir. 1989). To establish a prima facie case, a plaintiff need

only demonstrate that the jobs at issue are substantially similar; a plaintiff does not have to show that the skills or qualifications of the actual male and female employees holding the positions are also substantially equivalent. See Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1533 (11th Cir. 1992) ("[O]nly the skills and qualifications actually needed to perform the jobs are considered."). Moreover, "[t]he prima facie case . . . focuses solely on the primary

duties of each job, not duties that are incidental or insubstantial," and, although formal job titles or descriptions may be considered, the controlling factor in the court's assessment of whether two jobs are substantially equal must be actual job content. See id. Finally, a plaintiff does not have to prove that two jobs are identical but rather must show that the "skill, effort and responsibility required in the performance of the jobs are *substantially* equal." Id. (emphasis added) (internal quotation omitted).[23]

On appeal, Arrington argues that the district court erred in concluding that no material issue of fact existed as to whether the Deputy and Assistant Chief positions were substantially equal. Given our comparative analysis above, we agree with Arrington that a jury might reasonably conclude that the Deputy and Assistant Chief positions are "substantially equal." While appellees emphasize Arrington's formal job title, Arrington points to significant

---

[23]The Equal Pay Act also clearly applies when a plaintiff alleges an inequality between her pay and that of her successor. See Gosa v. Bryce Hosp., 780 F.2d 917, 919 (11th Cir. 1986) (per curiam).

evidence indicating that she exercised a wide range of duties as "second in command" to former Chief Hilton, duties which very closely track those actually performed by Deputy Chief Hayes.[24] At a minimum, Arrington has established a material question of fact with regard to her Equal Pay Act claim.[25] Thus, we reverse the district court's entry of judgment on this claim and remand it to the district court for further proceedings.

---

[24]We regret that appellees have chosen not to discuss the various reports and affidavits upon which Arrington relies to demonstrate the extent of her actual responsibility as Assistant Chief. Given such unquestioned evidence, appellees' repeated references to Arrington's formal job title and job description as Assistant Chief for Administration are unpersuasive.

[25]Appellees argue for the first time on appeal that no significant disparity exists between Hayes' salary as Deputy Chief and Arrington's salary as Assistant Chief. Because this argument was not fairly before the district court, we decline to address it here.

## III. CONCLUSION

The district court has committed a number of factual and legal errors in granting summary judgment for appellees. Therefore, we REVERSE the district court's grant of summary judgment to Hightower on Arrington's § 1983 Fire Chief Claim and REMAND that claim to the district court for further consideration consistent with this opinion. Further, we REVERSE the district court's grants of summary judgment on Arrington's Title VII and § 1983 Deputy Chief claims, as well as on Arrington's Equal Pay Act claim regarding her Deputy Chief "successor," and REMAND these claims for further proceedings in the district court.