United States Court of Appeals,

Eleventh Circuit.

No. 97-4364.

Kenneth HARPER, Daniel Gomez, Abraham Del Carmen, Brian Russell, Plaintiffs-Appellants,

v.

BLOCKBUSTER ENTERTAINMENT CORPORATION, a Delaware corporation merged into Viacom, Inc., Defendant-Appellee.

April 29, 1998.

Appeal from the United States District Court for the Southern District of Florida. (No. 96-2461-CV-DLG), Donald L. Graham, Judge.

Before COX and CARNES, Circuit Judges, and MARCUS[*], District Judge.

CARNES, Circuit Judge:

The plaintiffs in this case are four males formerly employed by Blockbuster Entertainment Corp. ("Blockbuster"). They brought this suit against Blockbuster under Title VII and the Florida Civil Rights Act alleging that Blockbuster's grooming policy discriminated against them on the basis of their sex and that they were wrongfully terminated in retaliation for protesting that policy. After the district court granted Blockbuster's motion to dismiss the plaintiffs' complaint, the plaintiffs appealed. For the reasons discussed below, we affirm the district court's order dismissing plaintiffs' complaint.

## I. FACTS AND PROCEDURAL HISTORY

---

[*]Honorable Stanley Marcus was a U.S. District Judge for the Southern District of Florida sitting by designation as a member of this panel when this appeal was argued and taken under submission. On November 24, 1997, he took the oath of office as a United States Circuit Judge of the Eleventh Circuit.

For purposes of this appeal, we accept the allegations in plaintiffs' complaint as true. *See Harper v. Thomas,* 988 F.2d 101, 103 (11th Cir.1993).

In May of 1994, Blockbuster implemented a new grooming policy that prohibited men, but not women, from wearing long hair. The plaintiffs, all men with long hair, refused to comply with the policy. They protested the policy as discriminatory and communicated their protest to supervisory officials of Blockbuster. Two of the plaintiffs were the subject of media stories concerning their protest of the policy. All of the plaintiffs were subsequently terminated by Blockbuster because they had refused to cut their hair and because they had protested the grooming policy.

The plaintiffs timely filed a charge with the Equal Employment Opportunity Commission ("EEOC"). After the EEOC issued right to sue letters, the plaintiffs filed a four-count complaint alleging: (1) sex discrimination under Title VII, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); (2) sex discrimination under the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01 et seq. ("Florida Civil Rights Act"); (3) unlawful retaliation under Title VII; and (4) unlawful retaliation under the Florida Civil Rights Act.

Blockbuster moved to dismiss the complaint pursuant to F.R.C.P. 12(b)(6). The district court granted the motion, and this appeal followed.

## II. STANDARD OF REVIEW

We review *de novo* a dismissal for failure to state a claim. "The standard of review for a motion to dismiss is the same for the appellate court as it was for the trial court." *Stephens v. H.H.S.,* 901 F.2d 1571, 1573 (11th Cir.1990). A motion to dismiss is only granted when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### III. DISCUSSION

### A. COUNT I:  THE TITLE VII SEX DISCRIMINATION CLAIM

The plaintiffs allege that Blockbuster's grooming policy discriminates on the basis of sex in violation of Title VII. In *Willingham v. Macon Telegraph Pub. Co.,* 507 F.2d 1084, 1092 (5th Cir.1975) (en banc), our predecessor Court held that differing hair length standards for men and women do not violate Title VII, a holding which squarely forecloses the plaintiffs' discrimination claim. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209-1210 (11th Cir.1981).  Accordingly, the district court correctly dismissed Count I.

### B. COUNT II:  THE FLORIDA CIVIL RIGHTS ACT SEX DISCRIMINATION CLAIM

The plaintiffs also allege that Blockbuster's grooming policy discriminates on the basis of sex in violation of the Florida Civil Rights Act.

The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII. *See Ranger Ins. Co. v. Bal Harbour Club, Inc.,* 549 So.2d 1005, 1009 (Fla.1989); *Florida State Univ. v. Sondel,* 685 So.2d 923, 925 n. 1 (Fla.Dist.Ct.App.1996); *Gray v. Russell Corp.,* 681 So.2d 310, 312 (Fla.Dist.Ct.App.1996); *see also Paris v. City of Coral Gables,* 951 F.Supp. 1584, 1585 (S.D.Fla.1995); *Kelly v. K.D. Construction of Fla., Inc.,* 866 F.Supp. 1406, 1411 (S.D.Fla.1994).  No Florida court has interpreted the Florida statute to impose substantive liability

where Title VII does not.[1] Therefore, for the same reasons the complaint fails to state a sex discrimination claim under Title VII, it fails to state a sex discrimination claim under the Florida Civil Rights Act. The district court correctly dismissed Count II.

## C. COUNT III: THE TITLE VII RETALIATION CLAIM

The plaintiffs allege that they were discharged by Blockbuster in retaliation for protesting Blockbuster's grooming policy. To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate: (1) that he engaged in statutorily protected activity; (2) that he suffered adverse employment action; and (3) that the adverse employment action was causally related to the protected activity. *See, e.g., Coutu v. Martin County Bd. of County Comm'rs,* 47 F.3d 1068, 1074 (11th Cir.1995). A plaintiff engages in "statutorily protected activity" when he or she protests an employer's conduct which is actually lawful, so long as he or she demonstrates "a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Little v. United Technologies, Carrier Transicold Division,* 103 F.3d 956, 960 (11th Cir.1997). However, it is insufficient for a plaintiff "to allege his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable." *Id.*

The reasonableness of the plaintiffs' belief in this case is belied by the unanimity with which the courts have declared grooming policies like Blockbuster's non-discriminatory. Every circuit to

---

[1]Plaintiffs cite *Andujar v. National Property & Casualty Underwriters,* 659 So.2d 1214 (Fla.Dist.Ct.App.1995), to suggest that the Florida Civil Rights Act may have different substantive standards than Title VII. Noting that Title VII and the Florida Civil Rights Act are product of different sovereigns, the *Andujar* Court held that a judgment under Title VII does not preclude, under the doctrine of *res judicata,* a later judgment under the Florida Civil Rights Act. *See id.* at 1216-17. However, the court did not hold that the two statutes have different substantive standards for imposing liability.

have considered the issue has reached the same conclusion reached by this Court in the *Willingham* decision. *See Longo v. Carlisle DeCoppet & Co.,* 537 F.2d 685, 685 (2d Cir.1976); *Earwood v. Continental Southeastern Lines, Inc.,* 539 F.2d 1349, 1351 (4th Cir.1976); *Barker v. Taft Broadcasting Co.,* 549 F.2d 400, 401 (6th Cir.1977); *Knott v. Missouri Pac. R.R. Co.,* 527 F.2d 1249, 1252 (8th Cir.1975); *Baker v. California Land Title Co.,* 507 F.2d 895, 898 (9th Cir.1974); *Dodge v. Giant Food, Inc.,* 488 F.2d 1333, 1336 (D.C.Cir.1973).[2] The EEOC initially took a contrary position, but in the face of the unanimous position of the courts of appeal that have addressed the issue, it finally "concluded that successful litigation of male hair length cases would be virtually impossible." *EEOC Compliance Manual,* § 619.1 (Bureau of Nat'l Affairs, Inc.1996). Accordingly, the EEOC ran up a white flag on the issue, advising its field offices to administratively close all sex discrimination charges dealing with male hair length. *See id.*

Nonetheless, the plaintiffs contend that three decisions of the United States Supreme Court, decided after *Willingham,* made it reasonable to believe that Blockbuster's grooming policy violates the mandate of Title VII. However, as we will discuss below, none of the cases cited by the plaintiffs call into question the continuing validity of *Willingham;* therefore, the plaintiffs' belief that Blockbuster's grooming policy violated Title VII's prohibition against sex discrimination was not reasonable.

---

[2]The plaintiffs also argue that when judging the reasonableness of their belief, we should not charge them with substantive knowledge of the law as set forth in *Willingham* and the cases cited above. We reject the plaintiffs' argument because it would eviscerate the objective component of our reasonableness inquiry. *See Little,* 103 F.3d at 960. If the plaintiffs are free to disclaim knowledge of the substantive law, the reasonableness inquiry becomes no more than speculation regarding their subjective knowledge.

The plaintiffs first point us to *UAW v. Johnson Controls, Inc.,* 499 U.S. 187, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991). In *Johnson Controls,* the Court held that a company's policy of prohibiting women capable of bearing children from working in battery manufacturing jobs was facially discriminatory.[3] *Id.* at 198, 111 S.Ct at 1203. That holding, however, is entirely consistent with the *Willingham* Court's holding, and thus, fails to advance plaintiffs' argument. *See Willingham,* 507 F.2d at 1091-92 (holding that distinctions between men and women on the basis of fundamental rights such as the right to bear children constitute discrimination on the basis of sex under Title VII).

The plaintiffs also rely on *Newport News Shipbuilding and Dry Dock Co. v. EEOC,* 462 U.S. 669, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983), and *City of Los Angeles, Dep't of Water and Power v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), to support their position. In *Manhart,* the Court held that a policy requiring female employees to make larger contributions to an employee pension fund than their male counterparts was discriminatory. *See Manhart,* 435 U.S. at 711, 98 S.Ct. at 1377. The Court stated: "Such a practice does not pass the simple test of whether the evidence shows treatment of a person in a manner which but for that person's sex would be different." *Id.* (internal quotation omitted). In *Newport News,* the Court applied the test from *Manhart* to an employer's policy of providing lesser health benefits to the spouses of male employees than to the spouses of female employees, and concluded that the policy was discriminatory. *See Newport News,* 462 U.S. at 683, 103 S.Ct. at 2631. The plaintiffs argue that the

---

[3]The Court went on to hold that the company's policy did not constitute a bona fide occupational qualification ("BFOQ"). *See Johnson Controls,* 499 U.S. at 204, 111 S.Ct. at 1206. However, that portion of the court's decision is not relevant here, because we are not faced with the question of whether Blockbuster's grooming policy constituted a BFOQ.

application of the "but-for" test in *Manhart* and *Newport News,* undermines the *Willingham* Court's analysis and conclusions. We disagree for two reasons.

First, the policies at issue in *Newport News* and *Manhart* related to employee health and pension benefits. The existence and extent of such benefits bear directly on employment opportunity. Because health and pension benefits frequently represent a crucial component of an employee's compensation, the practical effect of denying or reducing such benefits on the basis of sex is to deny the employee an "employment opportunity" on the basis of sex. In contrast, the grooming policy at issue in *Willingham* "related more closely to the employer's choice of how to run his business than to equality of employment opportunity." 507 F.2d at 1091. Reasoning that Title VII was intended to "guarantee equal job opportunity for males and females," we concluded in *Willingham* that the grooming policy did not constitute sex discrimination. *Id.* Therefore, the Supreme Court's holdings in both *Newport News* and *Manhart* are consistent with the reasoning and conclusions of the *Willingham* Court. *See Tavora v. New York Mercantile Exchange,* 101 F.3d 907, 908 (2d Cir.1996).

Second, the discrimination at issue in *Newport News* and *Manhart* was discrimination based on sex alone. The *Newport News* and *Manhart* plaintiffs could not avoid the effects of the discriminatory policies; they received lesser benefits simply because of their sex. Because the discriminatory policies in those cases were aimed at a single immutable characteristic—the plaintiffs' sex—a simple "but for" test effectively identified forbidden discrimination. In contrast, the alleged discrimination at issue in *Willingham* was between members of the same sex based on the neutral characteristic of hair length. The *Willingham* plaintiff was denied employment because he chose not to cut his hair; however, males in general were not prohibited from working for the

7

defendant. Consequently, applying the "but-for" test from *Newport News* and *Manhart* to a *Willingham*-type situation does not effectively identify forbidden discrimination, i.e., discrimination that deprives members of a given sex of equal employment opportunity. The "but-for" test is appropriate only where alleged discrimination is based on sex alone. Therefore, the Supreme Court's use of that test in *Newport News* and *Manhart* does not affect the analysis or conclusions of the *Willingham* Court.

The plaintiffs chose to protest Blockbuster's grooming policy despite the existence of long-standing binding precedent holding that such a policy was not discriminatory. No decision cited by the plaintiffs has supplanted the reasoning or called into question the conclusions set forth in that binding precedent. Therefore, we hold that the plaintiffs could not have had an objectively reasonable belief that Blockbuster's grooming policy discriminated against them on the basis of their sex. Accordingly, the district court correctly dismissed the plaintiffs' Title VII retaliation claim.

## D. COUNT IV: THE FLORIDA CIVIL RIGHTS ACT RETALIATION CLAIM

The plaintiffs allege that Blockbuster violated the Florida Civil Rights Act by retaliating against them for protesting its grooming policy. As discussed above, decisions construing Title VII guide the analysis of claims under the Florida Civil Rights Act. Accordingly, because the plaintiffs cannot maintain a retaliation claim under Title VII, we conclude that the district court correctly dismissed the plaintiffs' Florida Civil Rights Act retaliation claim.

## IV. CONCLUSION

For the reasons set forth above, we AFFIRM the district court's order dismissing the plaintiffs' complaint.

8