Sandy BAAS, Plaintiff,

v.

GUESS?, INC., Defendant.

No. CIV. A. 98–0145–BH–S.

United States District Court,
S.D. Alabama,
Southern Division.

July 14, 1999.

Walter G. Chavers, Kimberly Jane Calametti, Gardner, Middlebrooks, Fleming & Gibbons, P.C., Mobile, Al, Candis A. McGowan, Gardner, Middlebrooks, Fleming & Gibbons, P.C., Birmingham, AL, for Sandy Baas, plaintiff.

Anne Regina Yuengert, Bradley Arant Rose & White, LLP, Birmingham, AL, Daniel Petrocelli, Mark A. Wasserman, Mitchell, Silberberg & Knupp, LLL, Los Angeles, CA, for Guess ?, Inc., defendant.

## FINDINGS OF FACT; CONCLUSIONS OF LAW AND ORDER

HAND, Senior District Judge.

This action is before the Court on defendant's motion for summary judgment (Doc.

---

1. Defendant's request for oral arguments on the motion for summary judgment (Doc. 27) is hereby DENIED.

2. Defendant's objections (Doc. 46) to the plaintiff's affidavit are, for the reasons stated

---

23). In this sexual discrimination action, plaintiff contends that she was terminated due to her female sex and in retaliation for complaining about alleged discriminatory and harassing conduct; discriminated against in the terms and conditions of her employment; and subjected to a sexually hostile work environment. Upon consideration of defendant's motion and supporting documents (Docs. 23 through 28),[1] plaintiff's response in opposition thereto (Docs. 40 through 42), the declaration of one of defendant's counsel of record, Mark Wasserman (Doc. 44), defendant's objections (Docs. 45 and 46) to the affidavit filed by the plaintiff,[2] and all other pertinent portions of the record, the Court concludes that defendant's motion is due to be granted.

## FINDINGS OF FACT

The Court, based upon the pleadings and both documentary and testimonial evidence submitted by the parties, specifically finds that the following material facts are undisputed or uncontroverted:

1. The plaintiff, Sandy Baas (Baas), filed this lawsuit under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, alleging that she was sexually harassed, discriminated against on the basis of her gender and retaliated against for complaining about sexual harassment. The defendant, Guess?, Inc. (Guess), denies all these allegations.

2. Baas began working for Guess on March 19, 1990, as the manager of its factory outlet store in Foley, Alabama. Baas was an employee as defined by Title VII. Her starting annual salary with Guess was $24,960.00.

---

by the defendant, SUSTAINED. *See also, Givhan v. Electronic Engineers, Inc.,* 4 F.Supp.2d 1331, 1334–35 (M.D.Ala.1998)(discussing the sufficiency under Fed.R.Civ.P. 56(e) of proffered affidavit testimony).

3. According to Baas, the sexually discriminatory and hostile environment to which she, as Manager of the Foley store, was subjected is evidenced by her allegations that:

Her supervisor, [Claude] Amar, provided [her requested] assistance [in operating the store registers] while sitting at a pool in a reclining chair. (Baas depo., p. 29 (Vol.I)).

... Amar visited the Foley Store several times, and usually spent his time at a hotel with a female companion. (Baas depo., p. 28/17–20 (Vol.I)). When Amar did come into the Foley store, he put his hands on the female employees, and gave customers discounts because they were cute. (Baas depo., p. 29/6–11 (Vol. I)). Amar also invited subordinate female employees to have drinks with him. (Baas depo., p. 29/11–12 (Vol.I)).

Baas Brief in opposition at 8. Baas does not allege that Amar "put his hands" on her or in any way sexually approached or accosted her. Baas does not identify any "subordinate female employee" who was subjected to and complained about an either unwelcome physical contact or invitation by Amar.[3] When specifically asked whether she herself had ever been "the victim of any sexual harassment in the company," Baas replied only that "I would say it came pretty close with Claude Amar ... Yeah ... It was borderline." Baas Deposition, Vol. I, at 201/4–10. In addition, Baas testified that she never reported or complained about Amar's alleged behavior. *Id.* at 201/11–15. In contrast, Baas actually confirmed that, on June 17, 1991, she wrote a letter to upper management in which she stated:

The communications with Claude [Amar] & Dany [Malka] have been open, honest and with much respect.

We have developed a healthy, happy working atmosphere and a security conscious staff.

Baas Deposition, Vol I, at 19/1–23 to 20/1–23 and Exhibit 2. Baas also testified at one point that her charges regarding the existence of a pervasive and prevalent sexually hostile work environment of six years duration did not refer to the Foley store during the first year and a half when she was the Manager of that store. *Cf.*, Baas Affidavit of April 1, 1996, at ¶ 7 with Baas Deposition, Vol. I, at 27/7–23 to 28/1. Finally, it is noted that, according to Baas herself, Amar was no longer working for Guess when, on or about February 17, 1992, Lou Capecci was hired as Vice–President of Operations of Factory Stores. Baas Brief in opposition at 8–9.

4. In July of 1991, Baas received a raise to $27,040.00 per year.

5. On or about August 26, 1991, Guess promoted Baas to the position of General Manager—Southeast over a number of its

---

**3.** Although Baas, in her opposition brief, makes certain allegations concerning a female employee identified as Jill Benton, these allegations are not only irrelevant in time but inconsistent with Jill Benton's testimony. For instance, Baas contends that "Benton complained to Bass at the opening of the Foley store [in 1990] when she received a key that went to Dany Malka's hotel room." Baas Brief in Opposition at 9–10. According to Jill Benton, however, she received "a room key to Dany's room" from another female named Misty who told her that Benton "needed to party with them [Dany Malka and Armand Marciano] and her" but that she told Misty "that that was absolutely inappropriate and I wasn't interested." Benton Deposition at 156/6–19. Baas also contends that "[w]hile at the Foley store, Amar pushed Benton into the restroom, looked at her, and asked if she was scared of him." Baas Brief in Opposition at 10. According to Benton, however, after Amar pushed her back into the bathroom "he joked around and he said, oh, your eyes got so big, are you scared of me, and I said no." Benton Deposition at 111/18–20. Finally, Baas also contends that "Amar arranged for Benton to stay in the same hotel room with him on her first business trip for the Defendant." Baas Brief in Opposition at 10. Benton, however, testified only that "Claude informed me that I would have to stay in the same hotel room with him based on availability." Benton Deposition at 111/22–23 and 112/1. No evidence has been presented to establish either the date of this alleged trip or that Benton was not in fact registered in her own hotel room.

factory outlet stores in the Southeast region and increased her annual salary to $52,000.00.

6. In February of 1992, Baas received a salary increase to $57,200.00 per year.

7. In May of 1992, Baas was promoted to District Manager with no salary increase. This position was created by Lou Capecci, defendant's Vice–President of Operations of the Factory Stores, and involved the supervision of approximately 15 factory outlet stores. Baas was the first employee of Guess to hold this position.

8. Baas contends that "[i]t was during this time that the Plaintiff first complained to her supervisor, Lou Capecci, about the discriminatory and hostile environment." Plaintiff's Brief in Opposition at 9. According to Baas, however, she simply told Capecci about "receiving a[n] hysterical telephone call from one of the employees under her supervision, Jill Benton [about being] propositioned by a superior and owner of the company, Paul Marciano." *Id.* In her deposition, Baas established the irrelevance of this alleged complaint not only by admitting that she received this call from Benton in January of 1991, over one year prior to telling Capecci about it, but by testifying that Benton, after discussing the invitation with Baas, "ended up going out to Scottsdale on her own accord and meeting [Paul Marciano]." Baas Deposition (Vol.I) at 67/20–23 and 68/1–12. In addition, Baas's description of this telephone conversation with Jill Benton is inconsistent with the testimony of Jill Benton, the alleged victim, who described the telephone call to Baas as follows:

> I called Sandra and said you're not going to believe who called me, Paul Marciano. And she was like shocked as I was. What did he want, what did he say. You're not going to believe it. I think he wants to date me. And she said, well tell me what happened. And I explained the conversation to her, told her what happened. And she was shocked. And I told her that I was

considering going to Scottsdale. And I think her exact words were, I don't think you should go, I don't think it's appropriate, are you sure, do you feel pressured to go. I can't really recall every detail of the conversation..... I think I made the comment to her that I assured Paul Marciano that if he wanted a sexual relationship, that that would not happen, and I made that perfectly clear so there would be no surprises. And that he assured me there would be separate rooms and he just wanted to get to know me as a person and there was nothing sexual about his interest in me. And I think I told Sandra that I had to go because if I didn't go, I would always regret the fact that I never knew. I mean, this could be my husband. What if I was Julia Roberts in Pretty Woman and this was a dream come true, I would never have to work again, and I could have kids, that was obviously my dream and vision for my future. And I thought, given the conversation I had with him, and certainly what he had accomplished with his organization, I respected him and I felt I had to go to see if he was the one.

Benton Deposition at 75/23, 76/1–23 and 77/1–7. According to Benton, Baas "still said I don't feel it's a good idea unless you feel comfortable." *Id.* at 77/10–11. In addition to the distortion of Benton's telephone call regarding Paul Marciano, Baas has again failed to proffer any evidence of discriminatory treatment directed towards herself during this time period. The irrelevance of this matter is further illustrated by Baas's own admission that it was not until after Lou Capecci was hired as Vice–President on February 17, 1992 and after Capecci promoted her to District Manager in May of 1992 that she made this alleged "first" and only complaint to Capecci. Plaintiff's Brief in Opposition (Doc. 41) at 8. Baas also admits that Capecci only held this job with Guess until February 20, 1993. *Id.* Moreover, Baas admitted in her deposition that she had no information that

Capecci related the subject matter of their conversation to anyone in a decision-making capacity at Guess. Baas Deposition, Vol. I, at 187/19–23 and 188/1–3.

9. In February of 1993, Baas received a salary increase to $60,000.00 per year.

10. In September of 1993, Guess hired Bernie Zeichner as President of all Retail Operations and his duties were to run the entire business including retail and factory stores. Zeichner held this position until April 28, 1995 when, according to Bass herself, he "was asked to leave his employment with Guess." Baas Brief in Opposition at 11.

11. On or about January 31, 1994, Baas became the Acting Director of Factory Stores with an annual salary of $77,000.00 and was responsible for overseeing all the factory stores. Bass reported directly to Zeichner, who was the person who actually promoted her to the Acting Director position.[4] In 1994, Guess had more than 40 stores nationwide. Baas does not contend that she ever complained to Zeichner about disparate treatment or the existence of a sexually hostile work environment.

12. On or about May 31, 1994, Barry Schwartz was hired as Director of Factory Stores and Baas became Assistant Director of Factory Stores with no decrease in salary. Schwartz held this position until March 3, 1995 when, according to Bass, he "was asked to leave his employment with Guess." Baas Brief in Opposition at 13. Baas held the position of Assistant Director of Factory Stores until February 13, 1995. As Assistant Director, Baas had responsibility for six to seven hundred employees nationwide.

13. Although Baas contends that she "complained to Schwartz about the discriminatory and harassing conduct she was experiencing," the description of what she allegedly "told Schwartz" contains no incident in which Baas was herself accosted or harassed in any manner whatsoever, let alone in a sexually hostile manner, or at which Baas was herself present. Baas Brief in Opposition at 14. In addition, Bass fails to identify either the time the sexually harassing conduct at issue in the alleged complaint to Schwartz was supposed to have been experienced by another female employee or the time she allegedly "told Schwartz" about it beyond claiming that their conversation was "[i]n the early part of 1995" or that "Schwartz was terminated within three months of Ms. Baas complaining to him." Id. at 14–15. According to her deposition testimony, Baas spoke to Schwartz about one single incident which occurred three years earlier but only "in general terms[;] I didn't go into names and so forth." Baas Deposition at 93/4–7. Baas admitted in her deposition that she had no information that Schwartz related the subject matter of their conversation to anyone in a decision-making capacity at Guess. Baas Deposition, Vol. I, at 187/15–18 and 188/4–7. Finally, Baas does not contend that Schwartz had any input in her termination more than seven months following Schwartz's own termination by Guess.

14. Baas also contends that she "complained to Judy Tabak that the work environment at Guess was discriminatory and hostile towards women." Baas Brief in Opposition at 15. According to Baas, "Judy Tabak ... was employed in the Human Resources Department at Guess ... from October 25, 1993 until June 16, 1995." Id. at 14. As to this alleged complaint, Baas does not even identify any specific incident of alleged discrimination or hostility which she communicated to Tabak, let alone one personally experienced or observed by Baas. In addition, as was true with respect to the alleged complaint to Schwartz, Baas has failed to identify a time for her alleged conversation with Tabak beyond stating it was "[i]n the

---

4. Although Baas comments in her brief that she "was never informed that she was 'Acting Factory Store Director'," she testified otherwise in her deposition. Cf. Baas Brief in Opposition at 11 with Baas Deposition, Vol. I, at 208/13–15.

Spring of 1995" and that "Tabak was also terminated shortly after this conversation." *Id.* at 15. Baas admitted in her deposition that she had no information that Tabak related the subject matter of their conversation to anyone in a decision-making capacity at Guess. Baas Deposition, Vol. I, at 187/4–14 and 188/8–11. Finally, Baas has submitted no evidence to establish that Tabak had or even could have had any input into Guess's decision to reassign or terminate Baas.

15. On or about February 13, 1995, Guess reassigned Baas to a Regional Manager position and reduced her annual salary from $77,000.00 to $70,000.00. Although Baas describes this as a demotion, she does not dispute that her reassignment occurred only after Guess completely eliminated the Assistant Director position and divided the duties and responsibilities of the assistant director position between Baas and Steven Crass, the only other Regional Manager who was hired "sometime in 1993." Baas Brief in Opposition at 14. Thus no one, male or female, replaced Baas in the position of Assistant Director and the reduction in salary is not inconsistent with the undisputed reduction in duties and responsibilities. Baas also admitted that, aside from the manner in which she was told about the reorganization and salary reduction, she nonetheless thought at the time that it was an appropriate business decision. Baas Deposition, Vol. I, at 212/8–14.

16. Although Baas argues that her "career also began to suffer at the same time these complaints were lodged [and][i]n February 1995, [she] was demoted back to Regional Director, and received a salary deduction," she has failed to proffer any evidence either that she was herself subjected to a hostile work environment or that anyone at Guess retaliated against her for communicating the complaints of others. Baas Brief in Opposition at 14–15. Baas's alleged communications to Schwartz and Tabak concerning the isolated and sporadic complaints four other female employees may have had with other unidentified Guess employees/supervisors at some unidentified time does not constitute evidence that Baas was exercising her rights under Title VII for which an employer may not retaliate. Baas herself admits that "[n]either Schwartz nor Tabak had much of a response to [Baas's] complaints." *Id.* at 15. Indeed, according to Baas, Tabak's response was to agree by conveying her opinion about the reason why an unidentified female manager at Guess had recently been terminated. *Id.* There is, therefore, no evidence in the record to support any connection between Baas's communications with Schwartz and Tabak and her reassignment on February 13, 1995 or thereafter.

17. Baas admits that she held the position of Regional Manager from February 14, 1995 until on or about June 13, 1995 when she became a District Manager. According to Baas, Guess restructured the districts to create seven District Managers, five of whom were male. Baas Brief in Opposition at 15. Bass has admitted that the financial performance of the factory stores was declining in the last couple of years of her tenure with Guess. Baas Deposition, Vol. I, at 145/22–23 and 146/1–17. Baas acknowledged that sales in the factory stores division were down approximately 22% in 1994 and 12% in 1995. *Id.* at 145/22–23 and 146/1–20.

18. Guess terminated Baas's employment on or about October 27, 1995, and gave her four weeks of severance pay. Armand Marciano decided to terminate Baas's employment for inadequate performance, and due to the inadequate performance of the factory stores division. A. Marciano Affidavit at ¶ 5–8; Baas Deposition, Vol. I, at 159:11–13; 178/5–11; 286/10–18; 290/17–23 and 291/1–13. Although Baas takes issue with Armand Marciano's assertions about the complaints he received concerning Baas's "problems in performance, visiting stores, and communicating with people" (Baas Brief in Opposition at 11, *citing*, A. Marciano De-

position at 94), Baas specifically admitted that she knew of no other reason besides his displeasure with the declining financial performance of the factory stores for Armand Marciano to want to fire her. Baas Deposition, Vol. I, at 291/1–13.

19. Baas alleges that she "complained again to Armand Marciano in September of 1995 about discriminatory conduct." Baas Brief in Opposition at 16. Baas states that this alleged complaint "was prompted by numerous telephone calls from employees under her supervision regarding new policies that were discriminatory and were being implemented by Helen Marciano and another Guess employee named Maya." Id. Bass does not, however, identify in either her deposition testimony or brief in opposition to summary judgment who the employees were who "prompted" the alleged complaint, the policies about which she contends these unidentified employees complained, when she received these alleged phone calls or what exactly she said Armand Marciano about these alleged phone calls. Id., citing, Bass Deposition at 138. In her brief and earlier affidavit, Bass does contend that she herself received directives from Helen Marciano and Maya:

> [T]hat she needed to hire young little "cutesies" that "can wear skirts and dresses" [and] that her stores were too "old" and too "black" referring to the age and race of the employees she had hired, and that she needed to improve the looks of these stores by terminating these employees.

Baas Brief in Opposition at 16, citing, Bass Deposition, Vol. I, at 138/1–7; Bass Affidavit, February 11, 1999, at ¶ 10. Baas then argues that this sole complaint to Armand Marciano constituted evidence that she "complained about the discriminatory and harassing treatment and her complaints were one of the reasons for her termination." Baas Brief in Opposition at 17. According to Baas, "[e]ven though A. Marciano responded to [her] complaints regarding the situation with a statement that he would take care of the problem, his actual solution was the termination of the Plaintiff, only two months later on October 27, 1995." Id. at 16–17.

20. Bass does not dispute that "Helen and Mya [sic] were hired as recruiters to help the Factory Store[s] hire personnel." Baas Brief in Opposition at 16. Bass also acknowledges that Armand Marciano "does not recall Ms. Baas complaining that Helen and Mya [sic] had made comments about the age and appearance of the women and African–American[s] working in her stores." Id. What is perhaps more telling is Baas's deposition testimony confirming that "in all [her] hiring practices and what [she] conveyed to the stores and the management and the people at the stores, [she] communicated [her] point of view that these various characteristics, including physical characteristics, all needed to be taken into account in making hiring decisions" and that "I would agree that, yes, we needed to have someone who could wear the jeans and so forth." Baas Deposition, Vol. I, at 144/19–23 and 145/1–4. Baas also confirmed that the directive from Helen Marciano to hire women with particular physical characteristics was "nothing new to you" inasmuch as she had received similar instructions from Claude Amar when she was initially employed as Manager and hiring for the Foley Store in 1990 and 1991, prior to her promotion to General Manager Southeast. Id. at 142/9–15, 143/5–15 and 147/8–12. Baas also admitted that she was never told by Claude Amar "to hire men instead of women." Id. at 142/22–23; 143/1–4. Baas does not contend that anyone advised her to hire men instead of women.

21. Baas contends that after her termination, Guess replaced her with a less qualified male, John Wells, who was promoted from the position of Store Manager and had been supervised by Baas in his former position. Baas Brief in Opposition at 17. However, Baas acknowledged in her deposition that the store division of Guess within which she worked for six

years was dominated by women management. Baas Deposition, Vol. I, at 74/17–20. Baas also admitted that, in her entire term of employment with Guess, she was not aware of any employee having been discharged for sexual impropriety, sexual misconduct or any gender-based discrimination reason. *Id.* at 111/4–11. Baas also acknowledged that the further diminution of her responsibilities in about June of 1995 was the result of a second general reorganization at Guess in which the two regions were disbanded and broken up into various districts and there were no regional managers at all. *Id.* at 153/2–7. It was at this time that Baas was given her own district with six or seven stores and about the time Helen Marciano was hired as a troubleshooter. *Id.* at 153/8–15. Baas also admitted that over the course of the last financially troubling years when she worked at Guess, virtually every top executive was terminated. *Id.* at 176/16–20 and 293/8–17. Among the male top executive terminated, Baas identified Claude Amar (*Id.* at 25/16 and 28/21–23) Barry Schwartz (174/5–16) and Bernie Zeichner (174/17–23 and 175/1–3). Although not terminated, Baas acknowledged that Lou Capecci left Guess a few months after she allegedly complained to him (*Id.* at 68/23; 69/1–7 and 177/14–23).

22. Although Baas continues to argue that she was terminated for complaining about sexual harassment, she admits that she was not terminated because she was a woman. Baas Deposition, Vol. I, 177/1–4. Baas also admits that the decision to terminate her was not made by anyone to whom she reported any alleged sexual misconduct because, at that time, those people had all left Guess. *Id.* at 178/18–21. Baas also admits that the financial status of the company "[c]ould possibly be" part of the reason she was terminated. *Id.* at 180/20–23 to 181/1 and 183/2–5. Another factor identified by Baas herself as contributing to her termination was her "chronic complaints and the opposition to the new regime on—everything being torn up that I had established and worked so hard to do

for six years [such as "the Helen Marciano/Maya troubleshooting activities"]." *Id.* at 183/6–15. Baas acknowledges that she has no information at all that the people responsible for her termination made their decision on account of her complaining about sexual harassment. *Id.* at 184/9–19.

23. Baas now admits that her charge regarding pay differential between herself and Steven Crass, her only alleged comparator, was mistaken inasmuch as he earned some $10,000 less than she did. Baas Deposition, Vol. I, at 176/3–11 and 193/8–23 to 194/1. Baas also admits that she is unaware of any other male employee having received better pay or employment opportunities than she received while at Guess. *Id.* at 198/10–14 and 228/9–19.

24. Although Baas complains that, at the time of her termination, she "was not given a reason as to why she was terminated," Baas is as responsible for the alleged lack of communication as anyone. Baas testified that, after she was instructed to come to Los Angeles to meet with management to discuss "some things," suspected something was wrong, made several calls to different departments to find out what was going on and stumbled onto the fact that she was going to be fired as revealed by a subordinate employee in presumably the human resources department, she left only a voice mail message for the unidentified man "who was in charge of HR ... saying that if anyone needed to come talk to me, they needed to come to Alabama to do it [a]nd I refused to get on a plane [to go to Los Angeles]." Baas Deposition, Vol. I, at 167/2–23 and 168/6–13. According to Baas, she had no intention, once she found out she was going to be fired, of getting on an airplane and going back to Los Angeles as directed by upper management. *Id.* at 192/21–23 to 193/1–2. With respect to the manner in which she was terminated, Baas also testified that "I think I was retaliated against in not playing, quote, the firing game in going to L.A.

and sitting around the table and discussing what I already knew I was being terminated." *Id.* at 192/3–6. Baas's contention that she did not know any non-retaliatory reason for her discharge is also inconsistent with her admission that as early as her first reassignment and reduction in salary she was told by Barry Schwartz that the Marciano brothers did not like the way she was running her factory stores and the way sales were down. *Id.* at 221/7–18 and 222/3–19.[5]

25. Baas filed her Equal Employment Opportunity Commission (EEOC) charge on April 4, 1996. Baas filed this action on February 12, 1998, after receiving a Notice of Right to Sue from the EEOC.

## CONCLUSIONS OF LAW

Summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ..." F.R.Civ.P. 56(c). The movant bears the initial burden of showing the court that no genuine issues of material fact exist to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party discharges this burden by "showing" or "pointing out" the absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir.1995), *quoting*, *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553–54. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Jeffery*, 64

F.3d at 593; *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and to resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman*, 873 F.2d 256, 257 (11th Cir.1989). However, inferences in favor of the non-movant are not unqualified. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir.1995) (citation omitted). Moreover, evidence that is merely colorable (*see, Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir.1988)), conclusory (*see, Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir.1989)), or conjectural does not create a genuine issue of material facts.

If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir.1988). However, a "genuine" dispute about a material fact only exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594, *quoting, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512.

---

**5.** Baas also testified that during several telephone calls to former Guess employees soliciting their support for her position in this litigation she told them that the reason given to her for being fired was that "I was not

doing my job ... that the company was not being ... the factory store operations were not being run properly, operationally." Baas Deposition, Vol. I, at 275/13–18.

As applied to this action, it is first evident that Guess is entitled to summary judgment on Baas's gender discrimination claim which was predicated solely on her unsubstantiated belief that Steven Crass received more money than she for performing the same Regional Manager job. Baas has now conceded that this claim is without foundation as Crass earned some $10,000 less than she did. Baas has also admitted that she is unaware of any other male employee having received better pay or employment opportunities than she received while at Guess. Baas fails to even address this gender discrimination claim in her brief in opposition to summary judgment.

In contrast, the Court has rarely been confronted with such a surrealistic attempt to establish a sexually hostile environment as the sole predicate for an alleged discriminatory retaliation claim. Although Baas proffers no instance in which she was personally confronted with any offensive behavior, let alone behavior with sexual connotations, she boldly asserts that her alleged attempts to convey certain isolated and sporadic complaints by often unidentified subordinate female employees, complaints which are themselves questionable at best, is sufficient evidence to require that her wrongful termination and retaliation claims be submitted to a jury. Such sophistry is unparalleled particularly in light of Baas's admission that the persons to whom she allegedly complained did not discriminate against her and were long gone from Guess by the time the decisions regarding the company's reorganizations, her resulting reassignments, salary reductions and ultimate termination were made.

Baas has offered no "credible direct evidence from an employer's representative with decision making authority that establishes that a protected status [Baas's sex] constituted a substantial motivating factor in the challenged employment decision." Baas Brief in Opposition at 38. "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact [in issue] without inference or presumption." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990). "For statements of discriminatory intent to constitute direct evidence of discrimination, they must be made by a person involved in the challenged decision." *Trotter v. Board of Trustees of University of Alabama*, 91 F.3d 1449, 1453–54 (11th Cir.1996). In point of fact, Baas has admitted that Schwartz specifically advised her on the occasion of her first reassignment and reduction in salary that the Marciano brothers did not like the way she was running the factory stores and the way sales were down. Baas Deposition, Vol. I, at 221/7–18 and 222/3–19.

Instead of proffering any direct evidence, Baas relies on the test set forth in such cases as *Arrington v. Cobb County*, 139 F.3d 865, 873 (11th Cir.1998), *Batey v. Stone*, 24 F.3d 1330, 1334 (11th Cir.1994), and *Givhan v. Electronic Engineers, Inc.*, 4 F.Supp.2d 1331, 1339 (M.D.Ala.1998), to argue that she has established "a prima facie case of discrimination for her termination through circumstantial evidence [by showing] that (1) she is a member of a protected class; (2) that she was qualified for the job from which she was discharged; (3) that she was discharged; and (4)[t]hat her former position was filled by someone who is not in a protected class." Baas Brief in Opposition at 39. Baas argues that she has satisfied all four prongs.[6]

█ This Court is not, however, satisfied, in view of Baas's own admissions, that she has established by circumstantial evidence that "she was treated any differently than a similarly-situated male employee." Baas Brief in Opposition at 39. "To establish a prima facie case of discrimina-

6. Baas argues that she has satisfied the last prong not only because her former position was for a time held by a male, John Wells, but because Guess delayed by seven months its termination of the other Regional Manager, Steve Crass, and first gave him oral and written disciplinary warnings on his poor performance.

tion, the plaintiff must produce sufficient evidence to support an inference that the defendant employer based its employment decision on an illegal criteria." *Alphin v. Sears Roebuck & Co.*, 940 F.2d 1497, 1500 (11th Cir.1991), *citing, Halsell v. Kimberly–Clark Corp.*, 683 F.2d 285, 290 (8th Cir.1982), *cert. denied*, 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983). No such inference can be drawn in this case without indulging in the purest of fantasies. Baas has acknowledged that Guess underwent two general reorganizations prompted by the poor financial performance of the factory outlet stores. Baas also admitted that, over the course of the last financially troubling years when she worked at Baas, virtually every top executive including at least four male top executives was terminated or resigned. Baas simply asserts that, despite her various management positions, she ought not to be held responsible in any way for the financial performance of the factory stores under her direct supervision over the course of her employment. *See e.g.*, Baas Deposition, Vol. I, 181/7–23 and 182/1–16. Baas has also herself acknowledged that her performance was a factor considered in her termination and that, as early as her first "demotion" and reduction in salary, she was advised that the owners were displeased with her performance and the performance of her stores. Therefore, unlike the *Arrington* and *Batey* cases in which it was undisputed that plaintiffs' performance of her former job was exemplary and the rationale for not promoting plaintiffs to newly created positions which combined the duties of two formerly separate jobs was questionable, Baas herself has admitted that, in addition to being held responsible (albeit unfairly in her view) for the poor financial performance of her assigned stores, other factors led to her ter-

mination such as her "opposition to the new regime on—everything being torn up that I had established and worked so hard to do for six years." Baas Deposition, Vol. I, 183/6–12. Consequently, because of her own admissions, Baas has failed, in this Court's opinion, to establish "that she was qualified for the job from which she was discharged" and thus to establish a prima facie case of discrimination. *See e.g., Arrington*, 139 F.3d at 873; *Batey*, 24 F.3d at 1334, n. 11; and *Givhan*, 4 F.Supp.2d at 1339.

■ Even if the Court concluded that Baas had met her burden to establish a prima facie case of discrimination, it is absurd for Baas to argue that, despite her admissions and lack of any evidence of sexual discrimination, she has proven "that the real reason [she] was terminated was her sex, and in retaliation for complaining about discriminatory and harassing treatment [of other often unidentified female employees]." Baas Brief in Opposition at 43. Despite her protestations and general unsubstantiated allegations to the contrary, Baas has presented no evidence that "throughout her employment [at Guess] she was subjected to a sexually hostile work environment and subjected to discriminatory comments and treatment from male executives." *Id.* at 44. Baas has cited no binding precedent in this Circuit for the proposition that a supervisor's mere exposure to the alleged sporadic and isolated complaints of four out of 700 subordinates over a six and a half year period regarding treatment by other employees or management personnel, whether or not actually witnessed by the supervisor, can constitute evidence that the supervisor was exposed to an environment made hostile by the behavior at issue in the alleged complaints.[7] Such a proposition is as ab-

7. Despite Baas's contentions to the contrary, her alleged complaints of sexual harassment are time barred. To invoke the "continuing violation" exception to the statute of limitations bar, plaintiff must show a "dogged pattern" of related acts against a single indi-

vidual, one of which must fall within the limitations period, and not "merely discrete, isolated, and completed acts which must be regarded as individual violations." *Purrington v. University of Utah*, 996 F.2d 1025, 1028 (10th Cir.1993). Under Eleventh Cir-

surd as saying "I perceived that I was wet when my friends occasionally complained about getting caught in a rainstorm without an umbrella." Such empathetic reactions are not objectively reasonable under any standard.

 Nor has Baas established by any evidence that her reassignments, salary reductions and ultimate termination was "in retaliation for her complaining about discriminatory treatment of women in the work place and a sexually hostile environment." Baas Brief in Opposition at 45. In addition to the absurdity of relying on the alleged harassment of other persons, Baas has admitted that the persons to whom she allegedly conveyed the complaints did not retaliate or otherwise discriminate against her for those complaints and left their employment with Guess a short time thereafter. In addition, Baas does not contend, and has not offered any evidence to establish, that any of these persons to whom she allegedly complained had any input into the decision to "demote" and/or terminate her or conveyed her alleged complaints to Armand Marciano, the person who undisputedly made the decisions at issue.[8] Baas acknowledges that, in order to establish a prima facie case for retaliation, she "must show that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." Baas Brief in Opposition at 46, citing, *Wideman v. Wal–Mart Stores, Inc.,* 141 F.3d 1453, 1454 (11th Cir.1998), and *Weaver v. Casa Gallardo,* 922 F.2d 1515, 1524 (11th Cir.1991). Based on the undisputed facts in this action, Baas has failed to meet her burden with respect to at least two critical prongs of a retaliation claim, namely to establish that she engaged in protected activity and that either her demotions or her subsequent termination was casually related to the complaints she alleges that she made to Lou Capecci, Barry Schwartz and Judy Tabak.

As the Eleventh Circuit has recently held "an employee who seeks protection under the opposition clause [of Title VII, 42 U.S.C. § 2000e-(3)a] must have a 'good faith, reasonable belief' that her employer has engaged in unlawful discrimination." *Clover v. Total System Services, Inc.,* 176 F.3d 1346 (11th Cir.1999), *quoting, Little v. United Techs., Carrier Transicold Div.,* 103 F.3d 956, 960 (11th Cir.1997). "The objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against existing substantive law." *Id.,* citing, *Harper v. Blockbuster*

cuit precedent, plaintiff must establish that "a substantial nexus exists between a timely filed claim and an otherwise time-barred claim," and the appropriate inquiry focuses on (1) whether the alleged acts involved the same type of discrimination, tending to connect them in a continuing violation; (2) whether the acts were recurring versus isolated; and (3) whether the act has the degree of permanence which should trigger an employee's awareness of a duty to assert his or her rights. *Roberts v. Gadsden Memorial Hospital,* 835 F.2d 793, 799 (11th Cir.1988); *Berry v. Board of Supervisors of L.S.U.,* 715 F.2d 971, 981–82 (5th Cir.1983). The sporadic and isolated incidents at issue in the case at bar, involving different women and different executives, neither witnessed by nor directed toward the plaintiff, fail to satisfy this test.

8. To the extent that Baas contends that her own complaint in September of 1995 to Ar-

mand Marciano regarding the conduct of Helen Marciano and Maya, particularly the comments these troubleshooters made that Baas's stores "were too 'old' and too 'black' referring to the age and race of the employees she had hired," constitutes the requisite "protected expression" on which to predicate liability for retaliation, her distortion of the undisputed facts does not create a "protected expression" where none existed. Baas's unhappiness over the changes being advocated by two other women hired specifically as troubleshooters and Baas's "chronic complaints and ... opposition to the new regime" who were dismantling what she had "worked so hard for six years" to establish does not equate with the existence of a work environment made hostile by sexual harassment, pervasive or otherwise, the complaints about which form the predicate for Baas's retaliation claim.

*Entertainment Corp.*, 139 F.3d 1385, 1388 n. 2 (11th Cir.1998) (failure to charge the employee who opposes an employment practice with substantive knowledge of the law "would eviscerate the objective component of our reasonableness inquiry"). With respect to the substantive law, the Eleventh Circuit reiterated that, in order to establish the existence of a hostile environment premised on sexual harassment, the plaintiff must establish, *inter alia*, "that the harassment occurred because of her sex, and 'that the harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment'." *Id.*, *quoting, Watkins v. Bowden*, 105 F.3d 1344, 1355 (11th Cir.1997). The Eleventh Circuit then discussed the Supreme Court's pronouncement that:

> [Title VII] does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex. The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the "conditions" of the victim's employment.

*Id., quoting, Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S.Ct. 998, 1002–03, 140 L.Ed.2d 201 (1998). As both the Eleventh Circuit and the Supreme Court emphasized "the conduct in question must be severe or pervasive enough that a reasonable person would find it hostile or abusive [and][t]hat re-

quirement is crucial to ensur[ing] that courts and juries do not mistake ordinary socializing in the workplace—such as ... intersexual flirtation—for discriminatory 'conditions of employment.' " *Clover*, at 176 F.3d 1346, 1999 WL 335389 *4, *quoting, Oncale*, 118 S.Ct. at 1003. *See also, Faragher v. City of Boca Raton*, 524 U.S. 775, ——, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998)("Simple teasing," off-hand comments and isolated incidents unless extremely serious will not amount to discriminatory changes in the terms and conditions of employment); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993)(The "mere utterance of an ... epithet which engenders offensive feelings in a employee does not sufficiently affect the conditions of employment to implicate Title VII.").[9] As was true in *Clover*, the conduct described by Baas in the case at bar "misses the mark by a country mile." *Clover*, at 176 F.3d 1346, 1999 WL 335389 *4.

Since it is undisputed that Armand Marciano was the decision maker regarding plaintiff's termination, and that he was completely unaware of any complaints by Baas regarding sexual harassment, Baas cannot "establish that [Guess] was actually aware of the protected expression at the time [Guess] took the adverse action." *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir.1993). Baas simply cannot establish a "causal link" between her termination and her alleged protected conduct.[10]

---

**9.** In *Harris,* the Supreme Court also held that the determination of whether an environment is sufficiently hostile or abusive involves analysis of the following factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, as opposed to a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Harris,* 510 U.S. at 21, 22, 114 S.Ct. 367. *See also, Edwards v. Wallace Comm. College,* 49 F.3d 1517, 1521–22 (11th Cir. 1995).

**10.** Finally, as the Court has previously stated, Baas concedes that Guess had a legitimate,

nonretaliatory reason for her termination and cannot offer any evidence that it was a pretext for retaliation. The plaintiff has the burden of convincing the fact finder "both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). That is, "[i]t is not enough ... to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination." 509 U.S. at 519, 113 S.Ct. at 2754. Here, Baas offers no explanation, has no evidence, and presents only rank speculation that retaliation "could have" played a role in

## CONCLUSION AND ORDER

For the reasons set forth above, the Court concludes that no genuine material issue of fact exists and that the defendant is entitled to judgment as a matter of law. In sum, Baas worked for Guess for over six years and was given ample opportunity to succeed in her job. Indeed, Baas was swiftly promoted to one of the highest positions in the Company. While Baas feels that she performed well for the Company, management disagreed and terminated her employment. As an at-will employee, Baas had no more chance than her terminated male counterparts in Factory Store management to bring a claim for wrongful discharge. Baas has nonetheless tried to stitch together a sex discrimination claim out of a fabric of speculation, misinformation, and distortion. Baas has, however, by her own admissions, established that there exists no triable issue of fact in this litigation and that summary judgment in favor of the defendant is mandated.

It is therefore **ORDERED** that defendant's motion for summary judgment (Doc. 23) be and is hereby **GRANTED** and that **JUDGMENT** be entered in favor of the defendant, Guess?, Inc., and against the plaintiff, Sandy Baas, said plaintiff to have and recover nothing of the defendant. Costs are taxed against the plaintiff.

## JUDGMENT

It is **ORDERED, ADJUDGED** and **DECREED** that defendant's motion for summary judgment (Doc. 23) be and is hereby **GRANTED** and that **JUDGMENT** be and is hereby entered in favor of the defendant, Guess?, Inc., and against the plaintiff, Sandy Baas, said plaintiff to have and

her termination. Baas fails to overcome Guess's undisputed nonretaliatory reason with "specific, substantial evidence of pretext." *Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1437 (9th Cir.1990) (plaintiff must come forward with "specific, substantial evi-

recover nothing of the defendant. Costs are taxed against the plaintiff.

dence that employment decision was a pretext or discrimination"). Indeed, Baas admits Guess had legitimate business reasons and concerns for terminating her employment.